T.C. Memo. 1996-117


UNITED STATES TAX COURT


DANIEL R. LEAVELL AND EVA LOVENE LEAVELL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20032-92.                    Filed March 11, 1996.


<u>David T. Lumerman</u>, for petitioners.

<u>John W. Duncan</u>, for respondent.


MEMORANDUM OPINION


SWIFT, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes for 1985, 1986, and 1987 and additions to tax as follows:

| | | | Additions to Tax | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)/ 6653(a)(1)(A) | Sec. 6653(a)(2)/ 6653(a)(1)(B) | Sec. 6661(a) |
| 1985 | $352,825 | $88,206 | $17,641 | * | $ 88,206 |
| 1986 | 85,404 | 21,351 | 4,270 | * | 21,351 |
| 1987 | 526,354 | __ | 26,318 | * | 131,589 |

* 50 percent of interest due on portion of underpayment attributable to negligence.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concession of some issues by each party, the primary issues remaining for decision are: (1) The amount, if any, of net operating loss, investment interest, and investment credit carryovers from 1984 to which petitioners are entitled for the years in dispute; (2) whether a residence sold by petitioners in 1986 was used by petitioners as a personal residence; (3) the amount of gain petitioners realized in 1985, 1986, and 1987 in connection with two transactions relating to the sale of stock; (4) whether petitioners have substantiated claimed operating expenses and costs-of-goods sold with regard to various businesses; (5) whether Eva Leavell has substantiated for 1986 a claimed net operating loss of $20,378 relating to oil production; and (6) whether petitioners are liable for the additions to tax.

Trial and resolution of this case have been complicated by the failure of petitioners to cooperate with respondent's representatives during respondent's audit and by petitioners' failure to comply with important aspects of this Court's pretrial and trial rules.

For convenience, we combine our findings of fact and opinion on each issue.

Some of the facts have been stipulated and are so found. At the time they filed their petition in this case, petitioners resided in Carmi, Illinois.

During 1980 through 1985, petitioner Daniel R. Leavell (Daniel) was engaged in the conduct of various businesses involving oil production, the sale of oil field equipment, and the maintenance of oil wells. In 1984, petitioner Eva Lovene Leavell (Eva), under the name of L & L Supply, began a separate business involving the sale of oil field equipment. In 1986, Eva operated a separate business involving oil production.

Filing of Petitioners' 1985, 1986, and 1987 Joint Federal
Income Tax Returns, Respondent's Audit, and Trial

On October 17, 1988, petitioners untimely filed their joint Federal income tax return for 1987. On May 10, 1990, petitioners untimely filed their joint Federal income tax returns for 1985 and 1986. On September 27, 1990, petitioners filed an amended joint Federal income tax return for 1987.

During the audit by respondent's representatives of petitioners' Federal income tax returns for 1985, 1986, and 1987, petitioners did not cooperate with respondent's representatives. In spite of requests therefor, petitioners did not make available to respondent's representatives any meaningful books and records or other credible documentation regarding the various items that were examined. As a result of petitioners' failure to cooperate, respondent's audit adjustments and deficiency determinations at issue in this case were made on the basis of limited information and in some instances estimates. Respondent's deficiency determinations against petitioners for 1985, 1986, and 1987 were not arbitrary and capricious, and such deficiency determinations are entitled to the usual presumption of correctness. Welch v. Helvering, 290 U.S. 111, 115 (1933); Gatlin v. Commissioner, 754 F.2d 921, 923 (11th Cir. 1985, affg. per curiam T.C. Memo. 1982-489); Mendelson v. Commissioner, 305 F.2d 519, 522 (7th Cir. 1962), affg. T.C. Memo. 1961-319.

After granting petitioners' request for a continuance, this case was tried at a special trial session beginning on January 10, 1994. At trial, petitioners submitted no credible and little understandable evidence relating to the adjustments at issue. Petitioners were unprepared. They offered incomplete and disorganized documentation. Many documents that were admitted at trial were objected to by respondent's counsel because the documents had not been exchanged with respondent's counsel prior

to trial. Witnesses that should have been called were not called.

At the end of the second day of trial, petitioners brought into the courtroom 22 dirty, worn-out, mildewy boxes that allegedly contained records and documents relating to petitioners' businesses that petitioners speculated, if organized and examined, would support petitioners' entitlement to many of the items at issue in this case. These documents, however, were not organized. The documents were not presented or offered into evidence in an organized manner that related to the specific issues in the case. Petitioners' attorney had known about the documents for at least 2 or 3 weeks before trial, and probably for much longer, but had not disclosed the existence thereof to respondent's counsel nor to the Court, nor were the documents made available to respondent as required under our Rules and pretrial order. Petitioners and their attorney could not describe or explain in any specific, coherent, or meaningful manner the nature of the documents in the boxes, the relationship of the documents to the issues in the case, nor what the documents allegedly proved with regard to the issues in the case.

After trial, the Court held the record open for a period of time to allow petitioners to organize the documents in the 22 boxes, to make a presentation to respondent's representatives as to what the contents of the boxes established with regard to the adjustments at issue in this case, to confer with respondent

concerning what stipulations might be reached with regard to the documents, and to attempt to settle as many issues as possible.

Although petitioners' attorney and petitioners' accountant met with respondent's representatives a number of times after the trial to discuss the documents in the boxes, the parties reached no agreement as to the significance of the documents and no settlement or further stipulation with regard to any of the evidence or issues in this case. On August 31, 1994, the record in this case was closed, and we did not admit into evidence the contents of the 22 boxes nor any summaries that petitioners had purportedly made therefrom.

Petitioners now move to reopen the record and to admit into evidence the contents of the 22 boxes and/or the purported summaries of the contents of the boxes that their accountant allegedly prepared after trial. Petitioners assert that by holding the record open after trial and by suggesting that the parties meet to review the documents, to attempt to settle issues, and to attempt to stipulate to further evidence, the Court misled petitioners. Petitioners allege that they incurred substantial additional costs and that the Court thereby has become obligated to admit into evidence in this case the documents in the 22 boxes and the purported summaries thereof that petitioners belatedly produced. We disagree.

Petitioners have done little in this case to assist respondent and the Court to evaluate the issues before us in a

timely fashion and on the merits. Petitioners' late and incomplete submissions under the Court's discovery rules, their untimely filed motions to amend their petition, their raising new issues in their briefs that have not been raised either in the original or amended petitions, and their implausible explanations of their conduct in on- and off-the-record conferences with the Court have consistently frustrated the resolution of the issues in this case.

Perhaps the most serious violation of the Court's Rules occurred when petitioners attempted to have admitted en masse into evidence on the last day of trial, the 22 boxes of disorganized documents. By holding the record open, the Court simply attempted to give petitioners the opportunity to organize the documents and to make presentations to respondent's representatives that might result in a settlement of issues or in a stipulation of admissibility of some of the documents. Petitioners failed to negotiate any settlement or a stipulation with regard to any of the belatedly submitted documents, and we do not believe it appropriate now to admit such documents into evidence. We shall deny petitioners' motion for reconsideration of the Court's Order granting respondent's motion to close the record.

Also, in their opening posttrial briefs, petitioners attempt to raise new issues not previously raised in their original or

amended petition, or otherwise preserved.  Petitioners' untimely attempt herein to raise new issues will be denied.

Taxpayers have a duty to maintain accurate and credible books and records that relate to their income and deductions for each year and that are necessary for a proper determination of their Federal income tax liability.  Sec. 6001.  As has been said, "The United States has relied for the collection of its income tax largely upon the taxpayer's own disclosures * * *. This system can function successfully only if those within and near taxable income keep and render true accounts."  Spies v. United States, 317 U.S. 492, 495 (1943).  The burden of proof is on petitioners to prove by a preponderance of the evidence their entitlement to the deductions, losses, credits, and other adjustments that are in dispute in this case.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).

With the exception of a $21,222 trucking expense, discussed below, petitioners have failed to satisfy their burden of proof on each issue, and, with the exception noted, we hold for respondent on each issue.  Many of petitioners' arguments in their posttrial briefs are barely comprehensible.  Below, we attempt to make some sense out of petitioners' arguments and to discuss further the sparse and confusing facts in the record relating to each primary issue.

Carryover of NOL's, Investment Interest, and Investment Credit

Under Rule 142(a), petitioners have the burden of proof with regard to each of the adjustments still at issue in this case involving claimed carryovers (namely, a claimed $1,064,164 net operating loss carryover from 1984, a claimed $479,000 investment interest carryover from 1984, and a claimed $38,839 investment credit carryover from 1984).[1]

Petitioners, however, have presented no credible evidence and have not established the existence of, nor their entitlement to, any of the claimed carryovers. Petitioners and their counsel appear to seriously misunderstand the placement of the burden of proof on these issues. For example, with regard to the investment interest carryover, the following statement appears in petitioners' opening posttrial brief --

> respondent did not recompute or establish the proper
> investment interest amount, and [respondent is] therefore
> estopped from asserting that it may not be carried forward.

To the contrary, with regard to each of the claimed carryovers, petitioners have the burden of proof, and they have failed to satisfy it. Hill v. Commissioner, 95 T.C. 437, 439-444 (1990); Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 440-442

---

[1]    On brief, petitioners concede a claimed charitable contribution carryover from 1984.

(1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975).

Alternatively, both parties dispute the effect of bankruptcy proceedings that Daniel initiated in 1985 on the claimed net operating loss, investment interest, and investment credit carryovers. On July 17, 1985, Daniel filed a petition with the Bankruptcy Court for the Southern District of Illinois under Chapter 11 of the Bankruptcy Code. 11 U.S.C. sec. 1101 (1988). On December 12, 1985, Daniel's bankruptcy case was converted to a Chapter 7 bankruptcy. 11 U.S.C. sec. 701 (1988). On March 19, 1986, the Bankruptcy Court entered a discharge order in Daniel's bankruptcy case (thereby terminating as of the date of the discharge any stay that would have been in effect with regard to this Tax Court proceeding under 11 U.S.C. section 362(a)(8) (1988)), and in 1995 Daniel's bankruptcy case was closed.

Under section 1398(g)(1) and (4), the bankruptcy estate of Daniel would have succeeded to any net operating loss, investment interest, and investment credit carryovers to which Daniel would have been entitled. Any such carryovers that Daniel could substantiate and to which Daniel would have been entitled at the time the bankruptcy petition was filed, determined as of the first day of January 1985 (the year in which petitioner filed for bankruptcy), would have remained with the bankruptcy estate until the bankruptcy estate terminated in 1995. Sec. 1398(i).

Petitioners herein have made no attempt to establish the amount, if any, of the above-claimed carryovers that were recognized and used by the bankruptcy estate in Daniel's bankruptcy proceedings, and petitioners have not established the amount of any such carryovers to which Daniel succeeded at the termination of the bankruptcy.

Also, respondent, in the alternative, disputes Eva's entitlement to any portion of the claimed $1,064,164 net operating loss and $38,839 investment credit carryovers. Eva apparently did not file for bankruptcy, but even if petitioners established that some of the claimed net operating loss and investment credit carryovers were attributable to Eva,[2] Eva has not established the amount of any portion of the claimed net operating loss and investment credit carryovers to which she would be entitled.

Further, in 1984, Eva apparently received a discharge with respect to whatever liability she had on a $16.8 million indebtedness to Northern Trust Co. Eva's discharge with respect to this liability occurred as part of a 1984 settlement of a lawsuit petitioners had filed against Northern Trust Co. Eva

---

[2] We note that net profits were reported on the Schedules C relating to each of Eva's separate businesses that were attached to petitioners' joint Federal income tax returns for 1984 and earlier years that are in evidence. Thus, no portion of the claimed carryovers appears to belong to Eva.

thereby, in 1984 (to the extent she was liable at all on the indebtedness to Northern Trust Co.), arguably realized discharge of indebtedness income taxable to her under section 61(a)(12). No such income was reported by petitioners on their 1984 joint Federal income tax return (nor charged to petitioners on audit by respondent), and such additional income would likely offset any portion of the claimed $1,064,164 net operating loss carryover if any such carryover were established in this case and if Eva were otherwise entitled thereto.

Eva, however, has not established the existence of the claimed carryovers or that any portion of the claimed carryovers should be attributable to her.

In the alternative and in a characteristically vague and unclear manner, petitioners apparently claim that they were not actually indebted to Northern Trust Co. If that is so, in now calculating the very large net operating loss carryover from 1984 to which petitioners claim to be entitled, petitioners would be required to recalculate the very large interest deductions (cumulatively in excess of $4.5 million) that they claimed in 1984 and prior years with respect to the purported indebtedness to Northern Trust Co. As a result, the claimed net operating loss carryover from 1984 (that is based largely on such claimed interest deductions) would be eliminated or substantially

reduced, thereby in all likelihood eliminating the claimed carryover loss.

The claimed $479,000 investment interest carryover from 1984 relates to interest paid on a loan petitioners allegedly made to LCOR, a corporation owned and controlled by petitioners and by petitioners' relatives and/or friends. The evidence in this case establishes neither the existence of a loan to LCOR nor the existence or character of payments made by petitioners to LCOR.

Daniel and Eva are not entitled to any of the carryovers in dispute. Respondent's disallowance of the claimed 1984 net operating loss, investment interest, and investment credit carryovers is sustained.

## Gain on Sale of Residence

In 1986, petitioners sold a residence located in McPherson, Kansas. At trial, Daniel acknowledged that he, Eva, and other family members had often made personal use of this residence. On petitioners' 1985 and 1986 joint Federal income tax returns, no rental income was reported by petitioners relating to the rental of this residence.

On their 1986 joint Federal income tax return, petitioners claimed a $24,582 ordinary loss with regard to the sale of this residence.

Section 1.165-9(a), Income Tax Regs., provides that a loss sustained on the sale of a residence used by a taxpayer as his or her personal residence up to the time of sale is not deductible under section 165(a). Harris v. Commissioner, T.C. Memo. 1982-410, affd. on other issues 745 F.2d 378 (6th Cir. 1984).

In light of the evidence indicating petitioners' personal use of this residence, we sustain respondent's disallowance of this claimed loss. The fact that petitioners may have worked in the vicinity of this residence at the offices of LCOR does not convert petitioners' personal use of this residence into business use. Further, petitioners' alleged rental of this residence to their son in 1984 does not qualify the 1986 sale of the residence as a sale of business property. We sustain respondent's adjustment on this issue.

## Gain on Transactions Relating to Christa Oil Co. Stock

On November 26, 1985, Eva sold back to Christa Oil Co. (Christa Oil), a closely held family company, 333 shares of Christa Oil stock. In exchange, Eva received from Christa Oil $100,000 in cash and a partial interest in three oil leases.

Petitioners state that Eva's tax basis in the 333 shares of stock sold to Christa Oil was $333. On petitioners' 1985 joint Federal income tax return, petitioners reported a capital gain of $647,973 relating to the sale of this stock.

On November 4, 1986, Eva, for a total stated consideration of $1,828,000, sold back to Christa Oil the above partial interests in the three oil leases that she had received in November of 1985. Of the total stated consideration, $100,000 was to be paid to Eva in cash, and the $1,728,000 balance due under the contract with Christa Oil was to be reflected by the assignment to Eva of a specified number of barrels of oil to be produced from wells owned by Christa Oil, and by Christa Oil's commitment to make cash payments to Eva to the extent the barrels of oil Eva actually received under this contract and the $100,000 downpayment were not adequate to fully pay Eva the total $1,828,000 due under this contract.

On audit and based on records of Christa Oil, respondent determined that Eva received under the above 1985 and 1986 transactions with Christa Oil, $66,913 in 1985, $165,923 in 1986, and $518,278 in 1987, in additional payments from Christa Oil. Respondent treated these payments as additional capital gain income to petitioners for each respective year.

During the audit, petitioners provided respondent's representatives no information regarding the amount Eva received on the above transactions. Petitioners have not established that these payments were reported anywhere on their joint Federal income tax returns.

At trial and on brief, petitioners provide confusing information and ambiguous arguments concerning these two transactions with Christa Oil. During the trial, in response to a question from the Court as to whether petitioners had attempted to obtain the original records of Christa Oil, or its successor, regarding these transactions, the following dialogue occurred between the Court and petitioners' counsel:

> THE COURT: Mr. Lumerman, do you know the status of Christa Oil and the records? Have you made any attempt to get the records of Christa Oil with regard to the purchase by it of the stock from Mrs. Leavell?
>
> MR. LUMERMAN: No, Your Honor, frankly, we haven't.

We sustain respondent's determination on this issue in its entirety.

## Expenses of Various Businesses

### L & L Supply

As indicated, in 1984, Eva started an oil equipment sales business under the name of L & L Supply. On Schedules C attached to petitioners' joint Federal income tax returns for 1985, 1986, and 1987, Eva claimed operating and/or trucking expenses of $106,801, $53,941, and $124,454, respectively, relating to this business. On audit, respondent disallowed for lack of substantiation these claimed expenses of L & L Supply.

At trial, little evidence was presented with regard to these claimed expenses.  With regard, however, to the $106,801 claimed for 1985, there was admitted into evidence at trial an exhibit that does appear to substantiate $21,222 in trucking expenses incurred in 1985 by L & L Supply, which amount we allow.

The burden of proof with regard to petitioners' entitlement to these claimed expenses is on petitioners.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).  Petitioners have provided no basis for further estimating the operating and trucking expenses of L & L Supply.  With the exception noted of $21,222 in trucking expenses for 1985, we deny petitioners' claim to additional operating and trucking expenses with regard to L & L Supply.

With regard to claimed additional inventory or cost-of-goods-sold expenses of L & L Supply, petitioners, on brief, concede the figures respondent used each year for beginning and ending inventory of L & L Supply.  At trial, petitioners offered exhibit 26 as to 1986 purchases and exhibits 6 and 24 as to 1987 purchases of L & L Supply.  Information, however, in those exhibits is suspect.  For example, in exhibit 26 a claimed payment of $22,779 for an inventory item appears actually to be a payment to an attorney.  In exhibits 6 and 24, certain claimed payments for inventory items are represented by cashier's checks that show petitioners as payees.  Petitioners claim that since many suppliers would only deal with them in cash, by cashing the

cashier's checks, petitioners obtained cash necessary to make cash purchases. Petitioners, however, have submitted no receipts reflecting the alleged cash purchases. With regard to a claimed purchase of $260,000 from one Ralph Bassett, a bill of sale establishes that the purchase was for only $130,000.

Petitioners have failed to meet their burden of proof, and respondent's determinations of the ending inventory, purchases, and cost-of-goods sold of L & L Supply are sustained for each year in issue. Rule 142(a); Welch v. Helvering, supra at 115; Cheesman v. Commissioner, T.C. Memo. 1994-509.

### Claimed $200,810 NOL Re:  Sales & Servicing Business

For 7 months in 1985, Daniel operated a business that sold repair parts for and that made repairs to oil field drilling equipment.

On a Schedule C attached to petitioners' 1985 joint Federal income tax return, Daniel claimed a net operating loss of $200,810 relating to this business. On the Schedule C, Daniel indicated that the expenses claimed were estimates. At trial, Daniel testified that the $711,055 cost-of-goods sold claimed on this 1985 Schedule C was estimated based on seven-twelfths of total purchases and seven-twelfths of 1984 labor costs for this business. On this same Schedule C for 1985, however, Daniel also claimed a separate and additional $156,392 expense

relating to labor costs for this business. Petitioners' calculation thus appears to reflect a duplicate deduction for labor costs.

Petitioners also claim that the estimated gross receipts of $855,500 that petitioners reported on the 1985 Schedule C relating to this business were overreported. In support of their claim, petitioners offer a document that Daniel submitted to the Illinois Department of Revenue that indicates 1985 sales of $611,544 from this business. That document, however, only purports to reflect income from equipment sales of this business. It does not reflect service income, and it reflects sales for only 6 months of 1985.

On audit, due to lack of substantiation, respondent disallowed the claimed $711,055 cost-of-goods sold for 1985 relating to this business. In their opening posttrial brief, petitioners appear to concede that the claimed $200,810 loss relating to Daniel's sales and service business is not allowable.

As already mentioned, where a taxpayer fails to maintain adequate records regarding a business, respondent is entitled to adopt any reasonable method to determine income. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601. We sustain respondent's adjustment on this issue.

### Eva's Claimed $20,678 NOL Re:  Oil Production

With petitioners' 1986 joint Federal income tax return, Eva filed a Schedule C claiming a net operating loss from oil production of $20,678.  On audit, respondent disallowed this claimed loss on the grounds that no portion thereof had been substantiated.

At trial, petitioners offered documentation in support of claimed oil production expenses that indicates that many of the purported expenses reflected on the Schedule C relate to the business of L & L Supply.  Accordingly, the claimed expenses may already have been claimed by L & L Supply on the Schedule C relating to that separate business.  Further, based on the referred-to documentation, $12,000 of the expenses giving rise to the claimed $20,678 loss from oil production appear to constitute a payment to G.R. Penn Production Co., a company controlled by petitioners' son, and $5,000 of the claimed expenses appear to represent not expenses, but rather receipts or income petitioners received from G.R. Penn Production Co.

We disallow Eva's claimed $20,678 net operating loss for 1986 relating to oil production.

### Additions To Tax

Petitioners have offered no credible excuse for the late filing of their 1985 and 1986 joint Federal income tax returns.

Having business problems does not relieve taxpayers of the obligation to file timely Federal income tax returns.  We sustain respondent's imposition of the addition to tax under section 6651(a)(1) for 1985 and 1986.

Petitioners argue that they relied on their accountant to prepare proper income tax returns.  The evidence, however, indicates that petitioners did not provide their accountant with accurate and complete records from which accurate tax returns could be prepared.  See Hull v. Commissioner, T.C. Memo. 1991-582; Auld v. Commissioner, T.C. Memo. 1978-508.  We sustain respondent's imposition of the additions to tax under section 6653(a)(1) and (2) for 1985, and under section 6653(a)(1)(A) and (B) for 1986 and 1987.

Petitioners have not established that they had substantial authority for the positions taken on their joint Federal income tax returns, nor that the relevant facts were adequately disclosed on their returns.  For each year in issue, we sustain the additions to tax under section 6661.

An appropriate order denying petitioners' motion for reconsideration will be issued, and decision will be entered under Rule 155.