T.C. Memo. 2006-198



UNITED STATES TAX COURT


OREN L. BENTON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent*


Docket No. 7602-02.                Filed September 14, 2006.


Oren L. Benton, pro se.

Frederick J. Lockhart, Jr., and John A. Weeda, for
respondent.



SUPPLEMENTAL MEMORANDUM OPINION


GERBER, Judge: Respondent determined deficiencies in

petitioner's Federal income taxes, an addition to tax, and

_____

* This opinion supplements a previously released Opinion:
122 T.C. 353 (2004).

penalties for the short tax year of February 23 through December 31, 1995, and the tax years 1996 and 1997, as follows:

| Year | Deficiency | Addition to tax Sec. 6651(a)(1) | Accuracy-related penalty Sec. 6662 |
|------|-----------|--------------------------------|-----------------------------------|
| 1995[1] | $75,771 | – | $15,154 |
| 1996 | 240,565 | – | 48,113 |
| 1997 | 249,337 | $57,967 | 46,374 |

[1] Pursuant to sec. 1398(d)(2)(D), petitioner elected to terminate his tax year as of the bankruptcy commencement date, Feb. 23, 1995. The deficiency is with respect to the short tax year of Feb. 23 through Dec. 31, 1995.

All section references are to the Internal Revenue Code in effect for the tax years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

In a prior opinion, concerning respondent's motion for partial summary judgment, we considered certain legal questions that affected petitioner's ability to apply, on his tax returns, unused net operating losses (NOLs) from his bankruptcy proceeding. See Benton v. Commissioner, 122 T.C. 353 (2004) (Benton I). Among other things, in Benton I, we held that: (1) The "termination" of petitioner's chapter 11 bankruptcy proceeding, for purposes of section 1398, occurred on August 31, 1997, upon confirmation of the plan and discharge of the debtor; and (2) generally, NOLs not used or absorbed by his bankruptcy estate may be applied by petitioner against his income for his tax years in issue, to the extent allowed under section 172 and

the regulations thereunder.  <u>Benton v. Commissioner</u>, <u>supra</u> at 365, 371 n.11, 377.

This matter is currently before the Court on petitioner's motion for summary judgment.  See Rule 121.  The issues presented for our consideration are:  (1) Whether petitioner may carry certain NOLs from his bankruptcy estate to his 1995, 1996, and 1997 tax years; (2) the amount of the NOL carryovers available to carry over to those years; and (3) whether the amount of the NOL carryovers available to petitioner for his 1995, 1996, and 1997 tax years is sufficient to eliminate the deficiency, addition to tax, and/or penalty respondent determined for each of those years.

## Background

Petitioner resided in Oto, Iowa, at the time his petition was filed in this proceeding.  On February 23, 1995, petitioner filed a voluntary petition with the U.S. Bankruptcy Court for the District of Colorado under chapter 11 of the Bankruptcy Code. Concurrently, four related bankruptcy petitions were filed for business entities controlled by petitioner.  An additional entity controlled by petitioner filed a petition under chapter 11 during 1996.  The six bankruptcy cases were administered as a group.  A separate bankruptcy estate was established for each entity, including the Oren L. Benton Bankruptcy Estate (Benton estate) and the Nuexco Trading Corp. Bankruptcy Estate (NTC bankruptcy

estate). As of the date of each petition, the entity's assets became assets of its bankruptcy estate. Pursuant to section 1398(d)(2)(D), petitioner elected to terminate his tax year as of February 23, 1995. A separate Federal income tax return was filed for petitioner's short tax year February 23 through December 31, 1995.

Among the assets that made up the Benton estate were petitioner's interests in three entities that were involved in the operation and ownership of the Colorado Rockies National League Baseball Franchise. The three interests included a limited partnership interest in the Colorado Baseball Club Limited Partnership (CBCLP), which was the owner of the National League franchise. In addition, Colorado Baseball Management, Inc. (CBM), was a corporation entitled to a percentage of the gross revenues of CBCLP. Lastly, Colorado Baseball, Inc. (CBI), was the managing general partner in CBCLP.

A settlement agreement was entered into during June 1997 by petitioner; Beverly A. Benton (petitioner's wife); Oren L. Benton, as the debtor in possession of the Benton estate; the NTC bankruptcy estate; and the Internal Revenue Service. That settlement agreement incorporated by reference a March 5, 1997, letter offer from petitioner, Mrs. Benton, the Benton estate, and the NTC bankruptcy estate to the U.S. Department of Justice (DOJ) and DOJ's April 1, 1997, letter of acceptance of that offer. As

pertinent to this controversy, the settlement agreement

provided that

>6.  <u>Amount of Carryforward of Suspended Passive
>Activity Losses Into the Benton Estate</u>.  Oren L. Benton
>[petitioner] shall be allowed a passive activity loss
>carryforward under section 469 of the Internal Revenue
>Code  *  *  *  in the amount of Eighty Four Million
>Dollars ($84,000,000) from his pre-petition income tax
>periods ending on or before February 22, 1995.  This
>suspended passive activity loss carryforward is an
>attribute of Oren L. Benton which passed to the Benton
>Bankruptcy Estate on the [bankruptcy] petition date
>pursuant to I.R.C. section 1398.

>7.  <u>Deemed Disposition of Passive Activities</u>.  All
>passive activities identified by the IRS in its RARs or
>by Benton in their tax returns will be deemed disposed
>of in a taxable transaction on the effective date of
>the pending liquidation plan of reorganization for the
>Benton estate when the passive activity assets are
>transferred into a liquidation trust.  Either the
>Benton Estate or the liquidating trust shall pay any
>Federal income tax which may result from this
>transaction.

>8.  <u>Net Operating Losses Under IRC 172</u>.  Oren Benton
>shall not be allowed any net operating losses under
>section 172 arising in any taxable period on or before
>the [February 23, 1995, bankruptcy] Petition Date which
>might be carried forward to any tax period of the
>Benton Estate.  No net operating losses under section
>172 generated by the Benton Estate or the bankruptcy
>estates of the other debtors in the jointly
>administered bankruptcy cases shall be carried backward
>to any pre-petition income tax period of Oren Benton or
>except for losses identified in paragraph 6 forward to
>any post confirmation income tax period of Oren Benton.

A second amended plan of reorganization (the plan), dated

August 18, 1997, for petitioner and his related bankruptcy

estates was to be effective on August 31, 1997.  Until the

August 18, 1997, confirmation of the plan, petitioner served as

the debtor in possession.  Among other things, the plan provided that on August 31, 1997, most of the various bankruptcy estates' assets would be transferred into a liquidating trust to be administered for the benefit of creditors by a trustee.  The trustee was responsible for all tax matters relating to the estates subject to the supervision of an oversight committee. The creditors agreed in the plan that the tax attributes would go to the debtor (petitioner) upon confirmation of the plan.

The plan also provided that the interest in CBCLP was to be transferred to the NTC bankruptcy estate, and the CBM and CBI interests were to remain in the Benton estate.  The motivation for not transferring these assets to the liquidating trust was to maintain the S corporation status of CBM and CBI.  This limited exception to the general transfer of assets to the liquidating trust was approved by the Benton estate's creditors and promoted by all S corporation shareholders.  The S corporation shareholders were concerned about whether the transfer of an interest in an S corporation into a bankruptcy liquidating trust would result in the termination of S corporation status.  Their concern was focused on the question of whether a liquidating trust and/or liquidating trustee would be a qualified shareholder of an S corporation.  The Benton estate retained bare legal title to the interests in CBI and CBM with no rights of ownership.  The

plan included certain terms which in effect made the Benton estate a mere nominee.

On September 1, 1997, the first day following the effective date of the plan, petitioner was discharged under the provisions of Bankruptcy Code section 1141(d) from any debt that arose before confirmation, and he was relieved of his status as "debtor-in-possession".

On his 1997 Federal income tax return, petitioner claimed approximately $84 million in NOLs, which he maintained had been generated by the Benton estate (his bankruptcy estate) in accordance with paragraphs 6, 7, and 8 of the above settlement agreement and had not been used by the Benton estate.[1] Petitioner contends that the NOLs were derived from the Benton estate as of August 31, 1997, the effective date of the confirmed plan. During April 1999 petitioner filed a Form 1040X, Amended U.S. Individual Income Tax Return, for the short tax year 1995

---

[1] Benton v. Commissioner, 122 T.C. 353, 357 (2004) (Benton I), contained the statement that the approximately $84 million in NOLs petitioner claimed had arisen before the commencement of the bankruptcy proceeding. The parties' current disagreement reveals that respondent may have misinterpreted our statement in Benton I. The $84 million in NOLs are derivative of the $84 million in suspended passive losses petitioner incurred before commencement of the bankruptcy proceeding. The suspended passive losses became NOLs by operation of law upon the disposition of the entire interest in the activity that gave rise to the suspended passive losses. That conversion to NOLs occurred during the bankruptcy proceeding. Therefore, the $84 million in NOLs petitioner claimed did not arise before the bankruptcy (i.e., did not arise before Feb. 23, 1995) and were not prebankruptcy NOLs of petitioner.

and the calendar year 1996, attempting to use NOLs initially reported on his 1997 return.  During October 2001, petitioner filed amended returns containing increased claims for NOLs of $59 million.

In his petition in this case, petitioner alleged that he is entitled to $136 million in NOLs and $440 million in capital losses from years before and after the commencement of the bankruptcy proceeding.

Discussion

I.  Summary Judgment

Petitioner moved for summary judgment with respect to the availability of certain NOLs from the Benton estate to be applied in computing his 1995, 1996, and 1997 tax liabilities.  Summary judgment is intended to expedite litigation and avoid unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  A motion for summary judgment may be granted if there is no genuine issue as to any material fact and a decision may be rendered as a matter of law.  See Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  The moving party bears the burden of showing that there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Bond v. Commissioner, 100 T.C. 32, 36 (1993); Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).  A partial summary adjudication is

appropriate if one or more but not all issues in the case are susceptible of summary disposition.  See Rule 121(b); <u>Turner Broad. Sys., Inc. & Subs. v. Commissioner</u>, 111 T.C. 315, 323-324 (1998).  Some aspects of the NOL issues are ripe for disposition by means of partial summary judgment.  However, genuine issues of material fact exist with respect to other aspects of the NOL issues.

## II.  <u>The Controversy--Generally</u>

In <u>Benton v. Commissioner</u>, 122 T.C. at 365, 370-377, we held that:  (1) The termination of petitioner's chapter 11 bankruptcy proceeding, for purposes of section 1398, occurred on August 31, 1997, upon confirmation of the plan and discharge of the debtor; and (2) generally, petitioner may use NOLs from the Benton estate with respect to his separate tax years beginning with the year his bankruptcy proceeding commenced, to the extent allowed under section 172 and the regulations.  Benton I did not decide certain factual details pertaining to the amounts or sources of the losses or to the mechanics of the application of the losses under section 172.  Accordingly, Benton I did not fully resolve the parties' disputes concerning the existence and amounts of any NOLs from the Benton estate to which petitioner may have succeeded and which he may have had available for use in his 1995, 1996, and 1997 tax years.  See <u>Schaefer v. Commissioner</u>, T.C. Memo. 1998-163, affd. without published opinion 188 F.3d 514

(9th Cir. 1999); <u>Leavell v. Commissioner</u>, T.C. Memo. 1996-117.

III.   <u>The Net Operating Losses Available to Petitioner</u>

Petitioner, in his summary judgment motion in Benton I, contended that he had succeeded to:  (1) Prebankruptcy NOLs in an amount not less than $50 million and (2) NOLs generated by the Benton estate in an amount not less than $100 million. Petitioner now acknowledges that the alleged $50 million in prebankruptcy NOLs is unallowable for his 1995, 1996, and 1997 tax years under paragraph 8 of the settlement agreement.  The first sentence of paragraph 8 provides that petitioner would not be allowed any net operating losses under section 172 that arose in taxable periods before the bankruptcy petition date which might be carried forward to any taxable period of the Benton estate.

Petitioner continues to contend, however, that any NOLs attributable to the $84 million in suspended passive activity losses are not prebankruptcy NOLs that would be covered under the first sentence of paragraph 8 of the settlement agreement. According to petitioner, nothing in the settlement agreement prohibits NOLs generated by the Benton estate, to the extent not used by the Benton estate and to the extent petitioner succeeds to them, from being carried to, and used by him for, his 1995, 1996, and 1997 tax years.  He maintains that approximately $80 million in NOLs attributable to the $84 million in suspended

passive activity losses is available to be carried to his 1995, 1996, and 1997 tax years so as to offset entirely all taxable income adjustments for those years made by respondent in the notice of deficiency. Petitioner also contends that respondent failed to determine the Benton estate's correct taxable income for its tax years ended January 31, 1996, January 31, 1997, and August 31, 1998. In particular, petitioner contends that respondent failed to analyze and properly compute the Benton estate's tax attributes to which petitioner would succeed, including NOLs attributable to the suspended passive activity losses, capital losses, and any other losses not used by that estate. Conversely, respondent contends that, to the extent any of the $84 million of NOLs derived from suspended passive activity losses is substantiated, they are prebankruptcy NOLs of petitioner, which paragraph 8 of the settlement agreement specifically limits to petitioner's postconfirmation (1997 and later) use (and are not available for petitioner's 1995 and 1996 tax years).[2] In that regard, respondent relies upon a "finding" in Benton v. Commissioner, 122 T.C. at 357, that NOLs attributable to the $84 million in suspended passive activity losses "had arisen before the commencement of the bankruptcy".

_____

[2] We note that irrespective of the operation of the tax and bankruptcy laws, respondent's position is inconsistent with the settlement agreement.

Finally, respondent asserts that petitioner bears the burden of establishing the existence and amounts of NOLs available for use for his 1995, 1996, and 1997 tax years and that genuine issues of material fact remain concerning many of those matters. Respondent does acknowledge, however, that the Appeals officer, during consideration of the Benton estate's January 31, 1996, January 31, 1997, August 31, 1998, and August 31, 1999, tax years, found that the Benton estate had more than $10 million in NOLs available to carry over to its post-1999 tax years. In that regard, respondent concedes that, for purposes of applying this Court's Benton I Opinion, and without prejudice to respondent's appeal rights in this case, petitioner succeeded to and has available for use in the tax years before the Court at least $10 million in NOLs. Respondent further acknowledges that applying the conceded NOLs to petitioner's 1995, 1996, and 1997 tax years results in: (1) A reduction to zero of revised taxable income determined in the notice of deficiency for petitioner's 1995, 1996, and 1997 tax years; and (2) elimination of the addition to tax under section 6651(a)(1) and the accuracy-related penalty under section 6662 determined for petitioner's 1997 tax year. Respondent argues that even though the carryback of NOLs eliminates the 1995 and 1996 income tax deficiencies, the NOLs do not eliminate petitioner's liability for the section 6662 accuracy-related penalty for those years. See on this point

<u>Blanton Coal Co. v. Commissioner</u>, T.C. Memo. 1984-397, and cases
cited therein.[3]

We agree with petitioner that any NOLs attributable to the
$84 million in suspended passive losses are not prebankruptcy
NOLs of petitioner.  An analysis of the statutes and the parties'
agreement in the bankruptcy proceeding reveals that the net
operating losses did not exist before the bankruptcy.  To the
extent that our statement in Benton I that the NOLs had "arisen
before the commencement of the bankruptcy", <u>Benton v.
Commissioner</u>, 122 T.C. at 357, could be interrupted otherwise, it
is incorrect.[4]

The $84 million in suspended passive losses became allowable
upon the Benton estate's transfer of its interest in the passive
activities to the liquidating trust.  In addition, under
paragraph 6 of the parties' bankruptcy settlement agreement, the
$84 million in suspended passive activity losses was a tax

---

[3] As we observed in <u>Blanton Coal Co. v. Commissioner</u>, T.C.
Memo. 1984-397, in computing various additions to tax and/or
penalties, longstanding caselaw would permit the reduction of
additions and penalties by NOLs attributable to carryforward
deductions, but not by those attributable to carryback
deductions.

[4] In Benton I we decided a legal question on the basis of
parties' representations of the underlying facts in their motions
for summary judgment.  The outcome of the legal question in
Benton I did not depend on factual findings made by the Court.
In the setting of a motion for summary judgment, the facts are
not "found".  The parties' stated facts are interpreted by the
Court in a manner most favorable to the party opposing summary
judgment.  See <u>Bond v. Commissioner</u>, 100 T.C. 32, 36 (1993).

attribute of petitioner that passed to the Benton estate at the time of the bankruptcy petition. See secs. 469(b), 1398(g). By statutory definition, a "passive activity deduction" does not include a loss or deduction that is carried to the taxable year under section 172(a). See sec. 469(a) and (b); cf. sec. 1.469-2T(d)(2)(ix), Temporary Income Tax Regs., 57 Fed. Reg. 20758 (May 15, 1992) (referring to and incorporating rules found in sec. 1.469-2(d)(2)(ix), Income Tax Regs.)

In general, when a taxpayer disposes of an entire interest in a passive activity to an unrelated person in a fully taxable transaction, all passive losses from the activity, both suspended and current, are deductible from the taxpayer's income whether passive or nonpassive. The loss available upon that type of disposition is no longer treated as passive to the extent of: (1) Any loss from the activity for the tax year (including any losses suspended in prior years), over (2) any net income or gain for the tax year from all other passive activities (determined after application of any losses suspended in prior years). Sec. 469(g)(1)(A). Hence only upon the Benton estate's transfer of its interest in a passive activity to the liquidating trustee--a transfer deemed a taxable disposition by reason of the settlement--would any suspended passive loss from that activity, pursuant to section 469(g)(1)(A), qualify as a generally deductible nonpassive loss. Id.; sec. 1.469-2T(d)(2)(v),

Temporary Income Tax Regs., 53 Fed. Reg. 5716 (Feb. 25, 1988). Therefore, any NOLs generated by the Benton estate's suspended passive activity losses arose during the administration of the estate in bankruptcy, when the passive activity assets were transferred into the liquidation trust, and would not have been prebankruptcy NOLs of petitioner.

Respondent contends that paragraph 8 of the settlement agreement prohibits petitioner from using NOLs attributable to the $84 million in suspended passive losses.[5]  The prohibition of that section concerns section 172 NOLs arising in any taxable period on or before the bankruptcy petition date.  As explained above, the section 172 NOLs attributable to the $84 million in suspended passive losses did not arise before the bankruptcy petition.  Therefore, any such NOLs, to the extent not used by the Benton estate, became available to petitioner upon the estate's termination and may be used in petitioner's 1995, 1996 and 1997 tax years.  We hold that petitioner may apply those NOLs, to which he succeeded under section 1398(I), to his 1995,

---

[5] The first sentence of par. 8 provided:

Oren Benton shall not be allowed any net operating losses under section 172 arising in any taxable period on or before the [February 23, 1995, bankruptcy] Petition date which may be carried forward to any tax period of the Benton Estate.

1996, and 1997 tax years in accord with the provisions of section 172.[6] Benton v. Commissioner, 122 T.C. at 377.

As previously indicated, respondent concedes that petitioner succeeded to and has available for use in his 1995, 1996, and 1997 tax years at least $10 million in NOLs generated by the Benton estate. Respondent acknowledges that petitioner's application and use of that $10 million in NOLs would (1) reduce to zero all income adjustments for petitioner's 1995, 1996, and 1997 tax years determined by respondent in the notice of deficiency and (2) eliminate the section 6651(a)(1) addition to tax and section 6662 penalty determined for petitioner's 1997 year. Respondent, however, argues that petitioner may not carry back the NOLs to eliminate any liability for the accuracy-related penalties under section 6662 for 1995 and 1996.

It is well established that in computing additions to tax and/or penalties, an NOL carryforward deduction may result in the reduction or elimination of additions and/or penalties. Conversely, an NOL carryback deduction does not result in the reduction or elimination of such additions and/or penalties. See, e.g., Rictor v. Commissioner, 26 T.C. 913, 914-915 (1956) (denying the use of an NOL carryback deduction to reduce an

---

[6] As discussed more fully infra, a number of issues of material fact remain in dispute between the parties concerning the amount of NOLs generated by the Benton estate to which petitioner succeeded.

addition to tax for failure to file and addition to tax for substantial underestimation of estimated tax); <u>Auerbach Shoe Co. v. Commissioner</u>, 21 T.C. 191, 196 (1953) (denying the use of an NOL carryback deduction to reduce an addition to tax for fraud), affd. 216 F.2d 693 (1st Cir. 1954); <u>C.V.L. Corp. v. Commissioner</u>, 17 T.C. 812, 816 (1951) (denying the use of an NOL carryback deduction to reduce a delinquency penalty); <u>Pusser v. Commissioner</u>, a Memorandum Opinion of this Court dated December 7, 1951 (denying the use of an NOL carryback deduction to reduce a negligence penalty). Accordingly, the $10 million conceded by respondent as available to be carried back to petitioner's 1995 and 1996 tax years will not result in the reduction or elimination of petitioner's section 6662 penalty. See generally discussion in <u>Blanton Coal Co. v. Commissioner</u>, T.C. Memo. 1984-397.

Petitioner asserts that the amount of NOLs generated by the Benton estate to which he succeeded is far greater than the $10 million respondent conceded. The parties disagree about the amount of NOLs available to petitioner from the Benton estate. See <u>Schaefer v. Commissioner</u>, T.C. Memo. 1998-163; <u>Leavell v. Commissioner</u>, T.C. Memo. 1996-117. These matters involve a "genuine issue of material fact" for which the use of summary judgment is inappropriate.

Upon a careful review of the record and analyzing factual inferences in a manner most favorable to the party opposing

summary judgment, we conclude that genuine issues of material fact exist with respect to the computation of the amount of NOLs available for petitioner's 1995, 1996, and 1997 tax years.  See Dahlstrom v. Commissioner, 85 T.C. at 821.  Accordingly, summary judgment is inappropriate with respect to the remaining questions presented in petitioner's summary judgment motion.

An appropriate order

will be issued.