T.C. Memo. 1998-163


UNITED STATES TAX COURT


JOHN M. SCHAEFER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 478-96, 18876-96.     Filed May 5, 1998.


John M. Schaefer, pro se.

<u>Fred Green</u> and <u>Paul L. Dixon</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioner is liable for deficiencies in income tax and an addition to tax and an accuracy-related penalty as follows:

|      |            | Addition to tax | Accuracy-related penalty |
|------|------------|-----------------|--------------------------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1991 | $57,187    | $15,064         | $11,437 |
| 1992 | 129,170    | 19,577          | 25,834 |

After concessions,[1] the issues for decision are:

1.    Whether the Court's denial of petitioner's second motion for a continuance was proper.  We hold that it was.

2.    Whether petitioner's documentary evidence was properly excluded from evidence after he failed to comply with the Court's orders and his agreement with respondent to identify in writing and exchange that evidence with respondent.  We hold that it was.

3.    Whether petitioner may deduct more Schedule C and Schedule E expenses for 1991 and 1992 than respondent allowed. We hold that he may not.

4.    Whether petitioner may deduct investment interest expense for 1992.  We hold that he may not.

5.    Whether petitioner failed to report $18,795 in capital gain for 1992.  We hold that he did.

6.    Whether petitioner failed to report gain of $122,000 from the sale of the Brentwood Apartments in 1992.  We hold that he failed to report gain of $118,000.

---

[1] Petitioner concedes that respondent properly disallowed $9,883 of Olga Schaefer's Schedule C business expenses for 1991, and that he failed to report interest and dividend income of $936 for 1992.

7.  Whether petitioner may deduct a net operating loss from his bankruptcy estate for 1991.  We hold that he may not.

8.  Whether petitioner is liable for additions to tax and accuracy-related penalties under sections 6651(a)(1) and 6662(a) for 1991 and 1992.  We hold that he is.

Unless otherwise indicated, section references are to the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioner

Petitioner lived in Las Vegas, Nevada, when he filed his petition in this case.  He is a graduate of the University of California at Berkeley and the Georgetown University Law Center in Washington, D.C.

B.  1981 Tenants' Suit

Petitioner has been a property manager, investor, and attorney at all times relevant here.  He is admitted to practice law in California and Nevada.  Around 1981, several hundred of his tenants sued him for building code violations and personal injuries.  In 1986, a court not specified in the record entered a $1,950,000 judgment against him.  Of that amount, $300,000 was compensatory damages and the remainder was punitive damages.

C.    Petitioner's Bankruptcy

In 1987, petitioner filed a petition with the Bankruptcy Court for the Southern District of California under chapter 11 of the Bankruptcy Code. Wilford D. Willis was appointed trustee of petitioner's bankruptcy estate.

In 1991, the bankruptcy trustee disbursed $1,866,170 on behalf of petitioner's estate. The trustee paid: (1) $10,500 to Maria Camacho, a tenant in one of petitioner's buildings whose furniture had been improperly removed; (2) $670 to Lester Linn, Jr., a court reporter whose deposition fees petitioner had refused to pay; (3) $38,500 to Fremont Indemnity Co. (attorney's fees awarded against petitioner for a malpractice action brought by petitioner against the law firm Holland & Postal); (4) $77,000 to the City of Los Angeles for civil fines and interest for housing code violations; (5) $1,650,000 in punitive damages to Gallego; (7) $44,000 to Peterson for fees to remove liens and clear title on 700 acres of land in San Diego county owned by petitioner; and (8) $45,000 to Tanana for a judgment for malicious prosecution and abuse of process.[2]

---

[2] Gallego, Peterson, and Tanana are not otherwise identified in the record.

The bankruptcy court discharged petitioner's chapter 11 bankruptcy in 1991. The bankruptcy estate did not file a tax return for 1991.

D. The Estates of Petitioner's Mother and Aunt and Petitioner's Management of His Sons' Real Property

Petitioner wrote wills for his mother, who died in 1987, and his aunt, who died in 1988. Their estates totaled about $1 million. One-half of that amount passed to petitioner's sister. The other one-half passed to petitioner's two sons because petitioner did not want more assets while his bankruptcy case was pending.

Petitioner's two sons were around ages 15 and 16 in 1988. Petitioner bought and managed real property in Texas and Oklahoma with their $500,000 share of the inheritance. He charged his sons $2,500 to $3,500 per month to manage the property. Petitioner reported income from trustee's fees of $33,000 for 1991 and $30,000 for 1992.

E. Petitioner's Real Property

In 1991 and 1992, petitioner owned rental real property for which he claimed expenses. He owned the Centre City Hotel in San Diego, California, the Riviera Apartments in San Diego, a condominium in Marina del Rey, California, the Schaefer Hotel in Baltimore, Maryland, and the Brentwood Apartments in Baltimore.

Petitioner bought the Brentwood Apartments for $104,000 in 1987. The property became part of petitioner's bankruptcy estate when he filed his bankruptcy petition. Petitioner reacquired the Brentwood Apartments from his bankruptcy estate for $80,000 in 1990. He depreciated the property at $4,000 per year for 2 years and sold it for $190,000 in 1992.

F. <u>Petitioner's Income Tax Returns and the Notices of Deficiency</u>

Petitioner filed his income tax returns for 1991 on March 5, 1993, and for 1992 on October 21, 1993.

Petitioner reported interest and dividend income of $2,943 in 1992. He reported no gain from the sale of the Brentwood Apartments for 1992.

Petitioner deducted rental interest expenses on Schedule E of his 1991 and 1992 tax returns. Respondent determined that petitioner's deductions should be reduced as follows:

## 1991

| Rental property | Amount deducted | Amount allowed | Amount disallowed |
|---|---|---|---|
| Centre City Hotel | $71,396 | $51,032 | $20,364 |
| Riviera Apts. | 143,595 | 51,545 | 92,050 |
| Schaefer Hotel | 32,238 | 15,771 | 16,467 |
| Brentwood Apts. | 6,000 | -- | 6,000 |
| | 253,229 | 118,348 | 134,881 |

## 1992

| Rental property | Amount deducted | Amount allowed | Amount disallowed |
|---|---|---|---|
| Centre City Hotel | $52,662 | $21,405 | $31,257 |
| Riviera Apts. | 99,487 | 33,960 | 65,527 |
| Schaefer Hotel | 11,107 | -- | 11,107 |
| Marina del Rey condo | 9,600 | -- | 9,600 |
| | 172,856 | 55,365 | 117,491 |

Petitioner also deducted an additional $70,198 of unspecified Schedule E expenses for the Centre City Hotel for 1992, based on his estimate that his expenses were about 50 percent of the monthly revenues from the hotel. The $70,198 estimate did not include amounts petitioner deducted for real estate taxes, interest, petty cash and miscellaneous expenses, fire insurance, fire sprinklers, and depreciation.

Petitioner deducted Schedule C expenses for 1991 and 1992. Respondent determined that petitioner's deductions should be reduced as follows:

### 1991

| Schedule C deductions | Amount deducted | Amount allowed | Amount disallowed |
|---|---|---|---|
| Attorney's fees | $17,407 | -- | $17,407 |
| Wife's home office | 750 | -- | 750 |
| Other expenses | 36,825 | $18,412 | 18,413 |
| | 54,982 | 18,412 | 36,570 |

### 1992

| | Amount deducted | Amount allowed | Amount disallowed |
|---|---|---|---|
| All expenses | $50,430 | -- | $50,430 |

Petitioner paid $10,000 of the amount he deducted for attorney's fees in 1991 to the Solana Beach, California, law firm of Kolodny & Pressman in connection with his purchase of the Riviera Apartments.

G. Procedural History

This case was first calendared for trial at our session in Las Vegas, Nevada. We sent a copy of the Court's standing pretrial order to the parties 5 months before that session. Our standing pretrial order requires that any documents or materials which a party expects to use at trial (except to impeach), but which are not stipulated, be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The standing pretrial order also states that the Court

may refuse to receive in evidence any document or material not stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown.

About 2 months later, petitioner brought various business records for 1991 and 1992 to a meeting at the Office of District Counsel in Las Vegas. Respondent's counsel did not fully examine the documents at that time, but he told petitioner that he would give him a list of documents he wanted to review. Respondent later sent petitioner a list of documents respondent wanted to see. Petitioner did not respond because, according to petitioner, his work papers for 1991 and 1992 had become disorganized and he was "involved in something else and time got away" from him.

On March 24, 1997, at the calendar call for our Las Vegas trial session, the parties filed a joint motion to continue, to change the place of trial to Reno, Nevada, and to calendar these cases at this Court's May 5, 1997, trial session in Reno. The parties requested the continuance so that they could resolve issues, explore the possibility of settlement, and give petitioner an opportunity to provide substantiation to respondent. In an agreement between petitioner and respondent accompanying the motion, petitioner stated that he would give

respondent all documents that he would use at trial for 1991 by April 3, 1997, and for 1992 by April 17, 1997. Petitioner agreed to provide any additional documents requested by respondent within 7 days. Petitioner also agreed that if he did not give respondent the documents by the agreed dates, he would concede all issues for which he did not provide substantiation or would rely solely on oral testimony to substantiate. On the basis of the parties' pretrial agreement, we granted their motion. Petitioner did not give any documents to respondent pursuant to his agreement at any time before trial.

On the second day of the Reno session, petitioner filed a second motion to continue on the grounds that he had hired an accountant, Robert Ruchti, to assist him in these cases, and he could not get his records ready for trial because he had been physically assaulted on April 3 and May 3, 1997, by a resident of his building. Petitioner attached to his motion to continue a copy of the May 3, 1997, newsletter petitioner published for the residents of his building in which he described the May 3 assault on himself. Petitioner attached to his motion a copy of a police citation he received on May 4, 1997, in which he was charged with misdemeanor battery for unlawfully spraying in the face with

pepper spray an individual who lived in his building. We denied petitioner's motion.

At trial, petitioner sought to introduce into evidence canceled checks and receipts and a real property closing statement that he had not exchanged as required by the Court's standing pretrial order served on him on October 22, 1996, and as he had agreed to do in the agreement he and respondent submitted to the Court on March 24, 1997. We did not admit the documents into evidence. Petitioner testified at trial but called no other witnesses.

## OPINION

### A.  Petitioner's Motion To Continue

Petitioner contends that we should have granted his second motion to continue. We disagree. We granted the parties' joint motion to continue this case from the Court's Las Vegas session on March 24, 1997, and to calendar these cases for trial at our session in Reno. The purpose of that continuance was to give petitioner more time to organize his records and to present them to respondent.

Petitioner has given no good reason for his total failure to comply with his March 24 agreement with respondent. Petitioner contends that he did not give documents to respondent because he

was assaulted on April 3 and May 3, 1997. Petitioner offered no police report relating to the April 3 assault, or records showing that he sought medical care on or soon after April 3 during the 4-1/2 weeks from April 3 to the time of trial. Petitioner did not tell respondent that he had been assaulted in April until the calendar call in Reno, and he did not tell respondent that he could not meet the deadlines for giving documents to respondent as he had agreed to do.

Petitioner offered no records showing that he sought medical care on or soon after May 3. Petitioner offered no police report relating to an assault on May 3, other than the citation in which he was charged with misdemeanor battery for pepper-spraying a resident of his building on May 4, 1997. On May 3, 1997, immediately after one of the incidents, petitioner was able to write and publish a newsletter for the residents of his building in which he described the May assault.

The only medical evidence petitioner offered was a report dated May 23, 1997, in which Dr. Steven A. Holper stated that petitioner complained of ankle, knee, and arm pain and a headache resulting from two assaults in April and May 1997. Dr. Holper stated that petitioner appeared alert and oriented and was intact neurologically, and that visual inspection of petitioner's skull

revealed no evidence to suggest laceration, contusion, or abrasion. We are not convinced that petitioner could not assemble his records because of the assaults.

Petitioner also contends that we should have granted his second motion for continuance because he hired an accountant 2 weeks before the Reno session to assist him in preparing for trial. Employment of an attorney shortly before trial ordinarily is not grounds for a continuance, Rule 134; see Dorsch v. Commissioner, T.C. Memo. 1992-384, affd. 4 F.3d 996 (7th Cir. 1993); likewise, belated hiring of an accountant ordinarily is not grounds for a continuance, see Harris v. Commissioner, T.C. Memo. 1992-638.

Petitioner objects to the fact that we held the trial in Reno. This argument surprises us because petitioner joined in the motion to continue this case and change the place of trial to Reno.

It is within our discretion to consider the prejudice to all parties to a case and to the Court when ruling on a motion to continue a trial. See Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (trial court granted broad discretion on matters of continuance); Ungar v. Sarafite, 376 U.S. 575, 589 (1964); Brooks v.

Commissioner, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985).

Petitioner has only himself to blame for his failure to be prepared for trial in Las Vegas and his failure to assemble his records in a timely fashion.

B.   Exclusion of Evidence

Petitioner offered documents into evidence at trial that he had not exchanged or identified in writing as required by our standing pretrial order dated October 22, 1996, or provided as he had agreed to do in the parties' March 24, 1997, joint motion to continue.  Respondent objected to admission of the documents, and we did not admit them into evidence.  Petitioner contends that it is unfair to exclude the evidence.  We disagree.

Petitioner admits that he understood that the Court required the parties to identify the documents in writing and exchange them before trial.  He claims that he tried to comply with the order by bringing documents to the Las Vegas office of District Counsel in December 1996.  Respondent's counsel did not fully examine his documents at that time, but he asked petitioner to provide several documents early in 1997.  Petitioner does not claim that he tried to comply with this request.  In March 1997, petitioner agreed to give respondent all substantiating documents

for 1991 and 1992 by mid-April 1997, but he did not do so. Materials not provided in compliance with our pretrial orders may be excluded from evidence. Moretti v. Commissioner, 77 F.3d 637, 644 (2d Cir. 1996); Kodak v. Commissioner, T.C. Memo. 1991-485, affd. without published opinion 14 F.3d 47 (3d Cir. 1993). For that reason we sustained respondent's objection.

C.  Whether Petitioner Is Entitled to More Deductions Than Allowed by Respondent for 1991 and 1992

Respondent's determinations in the notices of deficiency are presumed to be correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975), affg. T.C. Memo. 1972-133. Deductions are a matter of legislative grace; petitioner must prove that he is entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Petitioner deducted more Schedules C and E business expenses than respondent allowed for 1991 and 1992. Respondent disallowed some of these deductions because petitioner did not substantiate them or show that he had a business purpose for the expenses.

A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or

business.  Sec. 162(a).  We may estimate the amount of the deductible expense if a taxpayer establishes that he or she paid a deductible expense but cannot substantiate the precise amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), affg. in part and remanding in part 11 B.T.A. 713 (1928).  The taxpayer must present evidence that provides a rational basis for our estimate.  Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Petitioner offered but we did not admit copies of records which he said would substantiate his Schedules C and E expenses for 1991 and 1992.  Petitioner argues that his testimony establishes that he is entitled to deduct the expenses on his 1991 and 1992 returns.  He also contends that his deductions were reasonable and that we should not disallow them even though he did not provide documentation.

Petitioner did not meet his burden of proving the amount of his rental expenses.  There is no evidence of the amount of interest he paid or of his other expenses for 1991 and 1992. Petitioner's testimony about his expenses was vague and general. He did not provide enough detail in his testimony for us to estimate the amount of his expenses for 1991 and 1992 under Cohan.  Although petitioner gave some examples of his expenses in

1991 and 1992, we could not tell whether these were expenses for which respondent had previously allowed deductions.

Petitioner urges this Court to accept his tax returns as prepared because he contends his deductions were reasonable. However, it is not enough that petitioner asserts that his deductions were reasonable; he must provide adequate proof. Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Petitioner has not given us an adequate basis to estimate his expenses under Vanicek v. Commissioner, supra, or Cohan v. Commissioner, supra.

Petitioner argues that he may deduct as a Schedule C or E expense $10,000 he paid as attorney's fees to Kolodny & Pressman in connection with his purchase of the Riviera Apartments. We disagree. He must capitalize those expenses. See INDOPCO, Inc. v. Commissioner, supra.

We conclude that petitioner may not deduct more in Schedules C and E expenses than respondent allowed for 1991 and 1992.

At trial, petitioner testified that he could not remember why he deducted $19,865 as investment interest on Schedule A of his 1992 return. We sustain respondent's disallowance of petitioner's deduction for investment interest.

D.  Whether Petitioner Failed To Report Capital Gains in 1992

Petitioner reported capital gains totaling $11,965 on Schedule D of his 1992 return.  Respondent determined that petitioner had capital gains of $30,760 for 1992.

1.  Walden Agreement

Petitioner testified that he had an oral agreement with Floyd A. Walden (Walden), who he described as a retired bank manager and a stock market expert, under which 50 percent of his capital gain was income to and reportable by Walden.  Petitioner did not offer any documentary evidence that he had an agreement with Walden, or evidence that Walden reported any of his alleged share of the gain in 1992.  Walden did not testify.  Petitioner did not establish that any of the $30,760 of capital gain was taxable to Walden.  We sustain respondent's determination.

2.  Brentwood Apartments

Petitioner bought the Brentwood Apartments around 1990 for $80,000.  He took $4,000 of depreciation per year for 2 years. Petitioner sold the Brentwood property in 1992 for $190,000. Respondent determined that petitioner failed to report gain of $122,000 [$190,000 - ($80,000 - $12,000)] (3 years of depreciation).

Petitioner contends that he did not receive $190,000 in 1992. He claims (without further explanation) that he cleared $5,000 or $419. Petitioner offered into evidence the settlement sheet from the closing on the Brentwood property. We did not admit it because petitioner did not exchange it as required by the Court's standing pretrial order or as he had agreed to do in the parties' joint motion to continue. Although petitioner testified that he received payments totaling several thousand dollars for the Brentwood property in 1993 before he reacquired it, he did not testify about the terms of the sale, whether the sale was an installment sale, or the details of his reacquisition of the Brentwood property in 1993. Petitioner did not prove that he did not have gain on the sale of the Brentwood property. We find that petitioner failed to report $118,000 of gain for 1992.

E.    Whether Petitioner Has Established the Amount of His Loss
      Arising From His Chapter 11 Bankruptcy

Petitioner was a debtor in bankruptcy from about 1987 to mid-1991. In 1990 and 1991, the trustee of his bankruptcy estate disbursed $1,866,170 to petitioner's creditors to satisfy various judgments and claims. Among the claims was a $1,950,000 judgment ($300,000 of compensatory damages previously paid in 1990 and

$1,650,000 of punitive damages) arising from a suit brought by petitioner's former tenants. Petitioner argues that, as a result of these disbursements, the estate had a net operating loss (NOL) that he may carry over to his 1991 and 1992 individual income tax returns.

Upon the termination of a bankruptcy estate, the debtor succeeds to its tax attributes, including NOL carryovers under section 172. Sec. 1398(g)(1), (i). Deductions available to the estate are not available to the individual debtor. Smith v. Commissioner, T.C. Memo. 1995-406.

Petitioner argues that the disbursements by the chapter 11 trustee generated a net operating loss for the bankruptcy estate. Petitioner's bankruptcy estate filed no income tax return for 1991. The record is silent as to the estate's tax history. There is no documentary evidence that the bankruptcy estate had an NOL for 1991. Although petitioner testified that his bankruptcy estate had an NOL for 1991 because it disbursed $1,866,170 to petitioner's creditors for various claims, he did not testify about any income the estate may have had from the sale of property or the amount of the bankruptcy estate's NOL. Petitioner has not established the amount of the bankruptcy

estate's NOL for 1991 or the amount of any NOL carryover to which he succeeded at the termination of the bankruptcy. See <u>Leavell v. Commissioner</u>, T.C. Memo. 1996-117. We sustain respondent's determination.

F.    <u>Addition to Tax and Penalty</u>

    1.    <u>Whether Petitioner Is Liable for the Addition to Tax Under Section 6651(a)(1) for Failure To Timely File</u>

Respondent determined that petitioner is liable for additions to tax under section 6651(a)(1) for 1991 and 1992.

A taxpayer is liable for an addition to tax of up to 25 percent for failure to timely file Federal income tax returns unless the taxpayer shows that the failure was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). Petitioner bears the burden of proving that the failure is due to reasonable cause and not willful neglect. <u>United States v. Boyle</u>, 469 U.S. 241, 245 (1985). To prove reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but nevertheless could not timely file the return. <u>Crocker v. Commissioner</u>, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner filed his 1991 return on March 5, 1993, and his 1992 return on October 23, 1993. Petitioner offered no evidence relating to this addition to tax. We conclude that petitioner is liable for the addition to tax under section 6651(a)(1) for 1991 and 1992.

2. Whether Petitioner Is Liable for the Accuracy-Related Penalty Under Section 6662

Respondent determined that petitioner is liable for the accuracy-related penalty for negligence for 1991 and for substantial understatement for 1992. Sec. 6662(a), (c), (d).

Taxpayers are liable for a penalty equal to 20 percent of the part of the underpayment to which section 6662 applies. Sec. 6662(a). Section 6662 applies to an underpayment attributable to negligence or to a substantial understatement of income tax. Sec. 6662(b)(1) and (2). Negligence includes a failure to try reasonably to comply with internal revenue laws or to exercise ordinary and reasonable care in preparing a tax return. Sec. 6662(c). A substantial understatement of income tax occurs when the amount of the understatement for a taxable year exceeds the greater of 10 percent of the tax required to be shown or $5,000. Sec. 6662(d)(1)(A). The accuracy-related penalty does not apply

to any part of an underpayment if the taxpayer shows that there was reasonable cause for that part and that the taxpayer acted in good faith.  Sec. 6664(c)(1).

Petitioner has not proven that the deficiency in income tax for 1991 was not due to negligence or intentional disregard of rules or regulations.  Petitioner did not argue that he is not liable for the accuracy-related penalty for substantial understatement for 1992.  We conclude that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1991 and 1992.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.