T.C. Memo. 2001-186

UNITED STATES TAX COURT

PAUL E. AND JANE ANNE GLADDEN EMERSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10221-99.                    Filed July 23, 2001.

Paul E. and Jane Anne Gladden Emerson, pro se.

<u>Joanne B. Minsky</u>, for respondent.

MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>: Respondent determined a
deficiency in petitioners' Federal income tax in the amount of
$6,046 and a section 6662(a) penalty in the amount of $1,209.20
for the taxable year 1995. Unless otherwise indicated, section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

This Court must decide: (1) Whether petitioners substantiated Schedule A medical expenses of $6,393, Schedule A interest expenses of $3,165, a net operating loss carryover of $16,505, Schedule C expenses of $6,260 related to an attorney/sales consultant activity, Schedule C expenses, including cost of goods sold, of $3,433 related to an antiques and jewelry activity, and Schedule C expenses of $26,927 related to an oil and gas activity; (2) whether petitioners are liable for self-employment tax on the income from their Schedule C activities and are entitled to the corresponding deduction; and (3) whether petitioners are liable for the accuracy-related penalty. If petitioners' itemized deductions are less than the standard deduction, petitioners will be entitled to the standard deduction under section 63(b).

Some of the facts in this case have been stipulated and are so found. Petitioners resided in Bradenton, Florida, at the time they filed their petition.

In 1995, Paul Emerson (petitioner), an attorney, was engaged in the business of an "Attorney/Sales Consultant" and in the business of "Sales-Antiques & Jewelry". As an attorney/sales consultant, petitioner worked with others and anticipated becoming the general counsel of an Ohio corporation. Petitioner worked from home. During 1995, Jane Emerson (Mrs. Emerson) was

not employed outside the home.  Petitioners also had an oil/gas operating interest.

Respondent contends that petitioners did not provide adequate substantiation for the disallowed items.  Petitioner presented numerous receipts into evidence.  Petitioner also tried to submit evidence at trial, which we excluded as it was not presented to respondent within 15 days of trial as required by our Standing Pre-Trial Order.  Schaefer v. Commissioner, T.C. Memo. 1998-163, affd. in unpublished opinion 188 F.3d 514 (9th Cir. 1999).

Deductions are strictly a matter of legislative grace. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers must substantiate claimed deductions.  Hradesky v. Commissioner, 65 T.C. 87, 89 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).  Moreover, taxpayers must keep sufficient records to establish the amounts of the deductions.  Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965); sec. 1.6001-1(a), Income Tax Regs.  Generally, except as otherwise provided by section 274(d), when evidence shows that a taxpayer incurred a deductible expense, but the exact amount cannot be determined, the Court may approximate the amount bearing heavily if it chooses against the taxpayer whose inexactitude is of his own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  The Court,

however, must have some basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Respondent disallowed $6,393 of petitioners' claimed medical expenses. Section 213(a) provides that a deduction is allowed for expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his or her spouse, or a dependent to the extent that such expenses exceed 7.5 percent of adjusted gross income. The term "medical care" means amounts paid for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body or for insurance covering the aforementioned items. Sec. 213(d)(1)(A), (C). "Medical care" also includes expenses for medicine and drugs. Sec. 1.213-1(a)(1), Income Tax Regs. A deduction is allowable only to individuals and only with respect to medical expenses actually paid during the taxable year. Sec. 1.213-1(a)(1), Income Tax Regs.

Petitioner testified that he had high blood pressure for which he took medicine. He spent $81.35 for his prescription every 90 days. Mrs. Emerson was on five different medications. The medicines were for blood pressure, fibromyalgia, and hormones. At the time of trial, Mrs. Emerson was undergoing radiation treatments for cancer.

Petitioner presented canceled checks and credit card statements for purchases from Phar-Mor, Walgreens, and Park West

Pharmacy in the amount of $1,255.13. Petitioner testified that these expenses were for prescriptions. He admitted that it was possible that some of these amounts were for items other than prescriptions.

Petitioner presented canceled checks made out to Golden Rule Insurance in the amount of $5,473.37 and Liberty Fund Inc. in the amount of $40.50 The checks made out to Golden Rule Insurance were paid quarterly. Petitioner testified that they were for health insurance. Petitioner was not sure whether Liberty Fund Inc. was for health insurance. Petitioner also presented checks in the amount of $343 made out to doctors and medical laboratories.

It is clear that petitioners incurred medical expenses. Under the Cohan doctrine, we estimate the allowable amounts of expenses as follows. We allow $880 for prescription expenses, all of the insurance payments to Golden Rule Insurance of $5,473.37, and all of the doctor and medical laboratory expenses of $343, for a total of $6,696.37, which is more than the $6,393 petitioners claimed on their return. This deduction is subject to a floor of 7.5 percent of adjusted gross income.

Respondent disallowed $3,165 of interest expense. A deduction for interest paid on indebtedness during the year is generally allowed under section 163(a). However, section 163(h)(1) provides that no deduction is allowed for personal interest. "Personal interest" does not include any "qualified

residence interest". Sec. 163(h)(2)(D). "Qualified residence interest" means interest which is paid during the year on acquisition indebtedness or home equity indebtedness with respect to any qualified residence of the taxpayer. Sec. 163(h)(3)(A). A "qualified residence" may be the principal residence of the taxpayer. Sec. 163(h)(5)(A)(i)(I).

In this case, petitioners had a mortgage on the home they lived in. Petitioners paid "interest payments" on their mortgage to "Retirement Account Inc., F.O.B. Allen S. Lewis IRA" (Allen Lewis). During 1995, petitioners wrote 11 checks which were written out to or referenced Allen Lewis and totaled $16,425. Petitioners also had a mortgage on their home with West Coast Bank. During 1995, petitioners wrote 32 checks for the "interest payments" to West Coast Bank in the total amount of $21,698.71. Petitioners claimed $3,165 of mortgage interest expense on their 1995 return, which petitioner prepared himself. On their 1994 return, petitioners claimed $8,450 of mortgage interest expense. Petitioners' 1994 return was prepared by an accountant. While we believe that petitioners' payments did not consist solely of interest expense, we find that a portion of these payments must have been for mortgage interest on their home. Although the interest portion of the payments probably was higher than the amount claimed on the 1995 return, petitioners did not provide sufficient evidence of the amount which was

interest.  We allow petitioners to deduct only the $3,165 of mortgage interest expense that they claimed on their 1995 return.

On their 1995 return, under "Other income", petitioners included $16,505 as negative income for a net operating loss carryover.  Under section 172(b), a net operating loss may be carried back to the 3 preceding taxable years and thereafter carried forward to the next 15 taxable years.  Petitioner did not provide any evidence, other than the 1994 return, to support the claimed net operating loss carryforward.  The fact that a return is signed under penalty of perjury is not sufficient to substantiate deductions claimed on the return.  Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979).  We find the evidence insufficient.  Accordingly, we uphold respondent's disallowance of the net operating loss in full.

In regards to petitioners' Schedule C activities, petitioner presented canceled checks and credit card statements for amounts paid for: telephone services; office supplies; an accountant's services for preparing taxes; professional dues and fees; postal service; a computer rental; insurance on the home; electric service in the home; travel expenses such as out-of-town motels, restaurants, and gas; truck rental; and auto maintenance. Petitioner testified that he conducted his legal services, the antiques business, and the oil and gas activities out of 700 square feet of his home.  Petitioner testified that the above expenses were for his businesses, but with the exception of the

travel expenses, petitioner did not state to which Schedule C business the receipts for the expenses related.

We believe that some of these expenses were personal expenses. Moreover, petitioner did not adequately substantiate his travel, car and truck, and computer expenses under the strict requirements of section 274(d). Travel, car and truck, and computer expenses cannot be estimated under Cohan. Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969). Based on the record, we allow petitioners to claim $2,000 of expenses on the Attorney/Sales Consultant Schedule C, $1,000 of cost of goods sold and $100 of expenses on the Sales-Antiques & Jewelry Schedule C, and $12,000 of expenses on the Oil/Gas Operating Interest Schedule C.

Section 1401 imposes a tax upon a taxpayer's self-employment income. Self-employment income includes the net earnings from self-employment derived by an individual during the taxable year. Sec. 1402(b). Net earnings from self-employment consist of gross income derived by an individual from any trade or business carried on by such individual, less the allowable deductions that are attributable to such trade or business, plus certain items not relevant here. Sec. 1402(a). A deduction for one half of the self-employment tax is allowed under section 164(f). We find that petitioners are liable for self-employment tax on the income earned from the Schedule C businesses and are entitled to the corresponding deduction.

Respondent contends that petitioners are liable for the accuracy-related penalty under section 6662(a). Section 6662(a) provides for an accuracy-related penalty in the amount of 20 percent of the portion of an underpayment of tax attributable to, among other things, negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Moreover, negligence is the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard is defined to include any careless, reckless, or intentional disregard of rules or regulations. Sec. 6662(c); sec. 1.6662-3(b)(2), Income Tax Regs. Petitioners presented no evidence regarding the accuracy-related penalty. They failed to keep adequate records as required by section 6001. We find that petitioners are liable for the accuracy-related penalty which must be recalculated under Rule 155.

To the extent that we have not addressed any of the parties' arguments, we have considered them and find them to be without merit.

Decision will be entered

under Rule 155.