T.C. Memo. 2002-214

UNITED STATES TAX COURT

HERBST ASSET MGMT. TRUST, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9999-00, 10000-00,     Filed August 21, 2002.
            10001-00, 10002-00.

David M. Wise, for petitioners.

John M. Tkacik, Jr., for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

CHIECHI, Judge: These consolidated cases are before us on

petitioners' motion for reconsideration (petitioners' motion for

---

[1]Cases of the following petitioners are consolidated here-
with: Herbst Charitable Trust, docket No. 10000-00; Andrea
Herbst, docket No. 10001-00; and Ronald Herbst, docket No. 10002-
00.

reconsideration) of our Memorandum Opinion in these cases set forth in T.C. Memo. 2002-73 (Herbst I).  We shall deny that motion.

We begin by setting forth the background pertinent to this Supplemental Memorandum Opinion, which includes not only the background set forth in Herbst I that we incorporate herein by this reference, but also certain other matters that the record in these cases establishes and/or that the parties do not dispute.

## Background

Herbst Asset Management Trust (Herbst Management Trust)[2] filed Form 1041, U.S. Income Tax Return for Estates and Trusts (trust return), for each of the taxable years 1996 and 1997.  In separate Schedules K-1, Beneficiary's Share of Income, Deductions, Credits, etc., that Herbst Management Trust included with each of its 1996 and 1997 trust returns, Herbst Management Trust showed Ronald Herbst (Mr. Herbst), Andrea Herbst (Ms. Herbst), and Herbst Charitable Trust as beneficiaries and Mr. Herbst and Ms. Herbst as the fiduciaries of Herbst Management Trust.

In each of its 1996 and 1997 trust returns, Herbst Management Trust deducted depreciation with respect to certain personal

---

[2]When referring in this Supplemental Memorandum Opinion to Herbst Asset Management Trust, Herbst Management Trust, and Herbst Charitable Trust, our use of the word "Trust" and any similar words is for convenience only and is not intended to convey any meaning or have any significance for Federal tax purposes.

assets of Ms. Herbst and/or Mr. Herbst, including their personal residence that they had transferred to Herbst Management Trust at a time that is not disclosed by the record. Herbst Management Trust also deducted other amounts in its 1996 and 1997 trust returns with respect to personal expenses of Ms. Herbst and/or Mr. Herbst.

During respondent's examination of Herbst Management Trust's 1996 and 1997 trust returns, respondent was provided with a trust document relating to Herbst Management Trust. That document showed an individual named Edward Bartolli as the original trustee of Herbst Management Trust. Edward Bartolli resigned shortly after the Herbst Management Trust was purportedly formed. During respondent's examination of Herbst Management Trust's 1996 and 1997 trust returns and thereafter, no books, records, or other information was provided to respondent establishing (1) the jurisdiction under the laws of which Herbst Management Trust was purportedly organized, (2) the person who is authorized to act on behalf of Herbst Management Trust, and (3) that Herbst Management Trust was at all relevant times a trust cognizable for Federal tax purposes. Nor did Herbst Management Trust at any time provide any books, records, or other information to respondent establishing the income reported and the expense deductions claimed in Herbst Management Trust's 1996 and 1997 trust returns.

Respondent has no record of Herbst Charitable Trust's having

filed with respondent Form 990-PF, Return of Private Foundation (Form 990-PF), for either of the taxable years 1996 and 1997. Nor does respondent have a record of any other Federal tax returns having been filed by Herbst Charitable Trust for those years.

In response to a request by respondent for information with respect to Herbst Charitable Trust, respondent was provided with a copy of Form 990-PF for each of the taxable years 1996 and 1997 that showed Herbst Charitable Trust as the organization to which each such form pertained. However, as discussed above, respondent has no record that Herbst Charitable Trust filed with respondent Forms 990-PF for the taxable years 1996 and 1997.

During respondent's examination of Herbst Charitable Trust's taxable years 1996 and 1997 and thereafter, no books, records, or other information was provided to respondent establishing (1) the jurisdiction under the laws of which Herbst Charitable Trust was purportedly organized, (2) the person who is authorized to act on behalf of Herbst Charitable Trust, and (3) that Herbst Charitable Trust was at all relevant times a trust cognizable for Federal tax purposes. Nor did Herbst Charitable Trust at any time provide any books, records, or other information to respondent establishing the income shown and the expense deductions claimed in the copies of Forms 990-PF for the taxable years 1996 and 1997 that were provided to respondent during respondent's examination

of Herbst Charitable Trust in response to respondent's request for information with respect to Herbst Charitable Trust and that showed Herbst Charitable Trust as the organization to which each such form pertained.

Ms. Herbst filed Form 1040, U.S. Individual Income Tax Return (return), for each of the taxable years 1996 and 1997. During respondent's examination of Ms. Herbst's 1996 and 1997 returns and thereafter, Ms. Herbst provided no books, records, or other information to respondent establishing the income reported and the expense deductions claimed in those returns.

Mr. Herbst filed a return for each of the taxable years 1996 and 1997. During respondent's examination of Mr. Herbst's 1996 and 1997 returns and thereafter, Mr. Herbst provided no books, records, or other information to respondent establishing the income reported and the expense deductions claimed in those returns.

James Binge (Mr. Binge) was the return preparer for each of Herbst Management Trust's 1996 and 1997 trust returns, each of Ms. Herbst's 1996 and 1997 returns, and each of Mr. Herbst's 1996 and 1997 returns. Mr. Binge was also listed as the return preparer for each of Herbst Charitable Trust's Forms 990-PF for the taxable years 1996 and 1997 that were provided to respondent during respondent's examination of Herbst Charitable Trust but that respondent has no record of having been filed with respon-

dent. Respondent has identified Mr. Binge as an individual involved with purported trusts used for tax avoidance purposes.

On September 25, 2000, Carol Jackson (Ms. Jackson), an attorney authorized to practice before the Court, filed the respective petitions in these cases, which she had signed on September 20, 2000. On December 8, 2000, David M. Wise (Mr. Wise), an attorney authorized to practice before the Court, entered an appearance in each of these cases.

On August 31, 2001, respondent filed a motion to compel production of documents and a motion to compel responses to respondent's interrogatories (respondent's motions to compel discovery) in each of the cases at docket Nos. 10001-00 and 10002-00. In respondent's motions to compel discovery in each of those cases, respondent represented, inter alia, that counsel of record in each such case, i.e., Ms. Jackson and Mr. Wise, had informed respondent's counsel that they no longer represented petitioners. Respondent further represented in respondent's respective motions to compel discovery in the cases at docket Nos. 10001-00 and 10002-00, inter alia, that respondent's counsel advised both Ms. Jackson and Mr. Wise that respondent would continue to recognize them as counsel for petitioner in each such case unless otherwise notified by the Court.

Respondent attached as exhibits to respondent's respective motions to compel discovery in the cases at docket Nos. 10001-00

and 10002-00 respondent's discovery requests.  Those respective discovery requests included the following interrogatories:

**Interrogatory No. 5:**

Please identify all trusts by name, address and EIN, for which petitioner was the creator, grantor, settlor, director or beneficiary or any trust in which petitioner was involved with [sic] in any way.  For each trust identified, please state whether the trust has been modified or amended; and if so, answer the following with regard to each modification or amendment for each trust:

(a) when the modification or amendment occurred,

(b) who authorized the modification or amendment,

(c) who made the modification or amendment,

(d) why the modification or amendment was made, and

(e) how each modification or amendment was made.

\* \* \* \* \* \* \*

**Interrogatory No. 10:**

For the period from the inception of the identified trusts through the present, list and identify each trust officer, trustee, trust protector, investment manager and other person who had any directory or management responsibility of any kind for each of the trusts.  For each person identified, please answer the following:

a.  List and identify the beginning and end of each person's tenure.

b.  Describe the nature of each person's directory or management responsibility.

\* \* \* \* \* \* \*

f.   Please list and describe all documents
which support or substantiate your answer.

Respondent's respective requests for discovery in the cases at docket Nos. 10001-00 and 10002-00 also included the following requests for production of documents:

With respect to Interrogatory No. 5, including all of its subparts and subparagraphs, please provide complete and correct copies of all original trust documents and subsequent modifications or amendments which substantiate or support your response.

*       *       *       *       *       *       *

With respect to Interrogatory No. 10, including all of its subparts and subparagraphs, please provide all documents and materials which support or substantiate your response.

Respondent also attached to respondent's respective discovery motions in the cases at docket Nos. 10001-00 and 10002-00 the so-called Branerton letter dated June 22, 2001, that respondent had sent to Ms. Jackson, one of petitioners' then two attorneys-of-record in these cases.  That Branerton letter requested, inter alia:

All receipts for income and expenditures for the taxable years 1996 and 1997, and any other records of income received by the above-referenced petitioners [petitioners in the cases at docket Nos. 9999-00 through 10002-00] or member of their immediate family (if applicable) or any related party or entity, in which they exercised control or received an economic benefit * * *

Respondent sought similar information in respondent's discovery requests that were attached to respondent's respective discovery

motions in the cases at docket Nos. 10001-00 and 10002-00.

On July 30, 2001, respondent sent a letter to Mr. Wise, which respondent attached to respondent's discovery motions in the cases at docket Nos. 10001-00 and 10002-00 and in which respondent stated:

> You stated during our July 17, 2001, telephone conversation that you would no longer be representing the above-referenced taxpayers [petitioners in the cases at docket Nos. 9999-00 through 10002-00], whose Tax Court cases are scheduled for trial the week beginning October 15, 2001. Although you served our office with a Notice of Substitution of Counsel, as of this date our records indicate that the Court has not agreed to the substitution or to your withdrawal as counsel in these cases.
>
> I have enclosed two (2) sets each of Respondent's First Set of Interrogatories to Petitioner ("Interrogatories") and Respondent's First Request for Production of Documents ("Production of Documents") which pursuant to Tax Court Rules 71 and 72 require responses within 30 days of service. As appropriate, please forward a copy of this letter and the enclosed Interrogatories and Production of Documents to Ronald Herbst and Andrea Herbst.

On September 4, 2001, the Court issued respective Orders (September 4, 2001 Orders) in the cases at docket Nos. 10001-00 and 10002-00 in which it directed (1) petitioners in those cases to file on or before September 13, 2001, written responses to respondent's motions to compel discovery; (2) Ms. Jackson and Mr. Wise each to file on or before September 13, 2001, any motions to withdraw as counsel; and (3) the Clerk of the Court to serve copies of respondent's respective motions to compel discovery and the Court's respective September 4, 2001 Orders not only on then

petitioners' counsel of record but also on petitioners at petitioners' address listed in the petitions.

On September 14, 2001, Ms. Jackson filed a motion to withdraw as counsel (motion to withdraw) in each of the cases at docket Nos. 10001-00 and 10002-00. On September 24, 2001, Ms. Jackson filed a motion to withdraw in each of the cases at docket Nos. 9999-00 and 10000-00. As grounds for each such motion, Ms. Jackson stated:

> The undersigned [Ms. Jackson] was working out of the offices of Wise & Associates until June 18, 2001. At that time, my employment contract was terminated, and I undertook employment at another firm. I seek a release from this court from representing the Petitioner in this matter because I am no longer associated with Wise & Associates.

On September 18, 2001, and on September 24, 2001, respectively, the Court granted Ms. Jackson's motion to withdraw in each of the cases at (1) docket Nos. 10001-00 and 10002-00 and (2) docket Nos. 9999-00 and 10000-00.

On September 17, 2001, Mr. Wise filed a motion to withdraw in each of the cases at docket Nos. 10001-00 and 10002-00. On September 24, 2001, Mr. Wise filed a motion to withdraw in each of the cases at docket Nos. 9999-00 and 10000-00. In support of Mr. Wise's motion to withdraw in each such case,[3] Mr. Wise repre-

---

[3]Mr. Wise's respective motions to withdraw in the cases at docket Nos. 9999-00 and 10000-00 did not detail the reasons for granting those motions. Instead, each such motion stated that the reasons for Mr. Wise's motion to withdraw in each such case

(continued...)

sented in pertinent part as follows:

> In June 2001 the undersigned [Mr. Wise] contacted the Petitioners and related that although he had filed a petition with the Tax Court, on their behalf, at the request of their accountant James Binge, he did not have a signed representation agreement with them. Following that conversation an agreement was forwarded to the Petitioners. After several weeks another call was placed to the Petitioners who indicated that they were having second thoughts about continuing the representation and were exploring "non-traditional" alternatives with James Binge. At that time the undersigned explained that the opportunity to meet with an examiner was rapidly evaporating and that formal discovery was immanent [sic]. The undersigned further explained the burden of complying with discovery and the possible sanctions for failure to comply. The Petitioners were urged to consult another tax practitioner and it was suggested that reliance upon the recommendations of James Binge may not be in their best interest. Following that conversation the undersigned contacted the Petitioner's examiner and requested that their file be held for a couple of weeks in case they changed their minds.
>
> On July 16th [2001] the undersigned contacted James Binge and was advised that the Petitioners did not wish to continue the representation and that the undersigned was not to attempt to contact them. The undersigned was informed that replacement counsel in the person of Marc Lehotsky * * * had been selected. The undersigned contacted the Petitioners who verified that they had made arrangements to have Mr. Lehotsky represent them and that they were aware that a Branerton conference had been set for the 17th [of July 2001] with District Counsel's office but that they did not wish to participate in such meeting unless they could be represented by their accountant James Binge. The undersigned related that he would not participate in the conference under those conditions.

---

[3](...continued)
were "the same reasons" set forth in Mr. Wise's respective motions to withdraw in the cases at docket Nos. 10001-00 and 10002-00.

The undersigned copied the Petitioner's file, mailed same to Mr. Lehotsky, and prepared and mailed a Notice of Substitution to the Tax Court indicating that Mr. Lehotsky would be representing the Petitioners. The undersigned also called Mr. Lehotsky and left a detailed message regarding the status of the case and inviting him to call the undersigned on his cell phone should he desire to discuss the case. Thereafter the undersigned closed his office and left town for a two week vacation.

Upon returning it was discovered that the under-signed's Notice of Substitution of Counsel had been returned and stamped "Not admitted U.S. Tax Court". The undersigned again left a voice mail message for Mr. Lehotsky and forwarded discovery requests to his office address. After having had no reply from Mr. Lehotsky the undersigned contacted Mr. Binge and advised that his office had been in contact with Mr. Lehotsky and that they had assurances that the [sic] would be admit-ted to practice in the Tax Court or would co-counsel with another attorney admitted to practice who would shortly enter an appearance. The undersigned cautioned Mr. Binge about the importance of timely complying with discovery and the sanctions that could be imposed for failure to comply.

On September 4th [2001] the undersigned received District Counsel's Motion to Compel and very shortly thereafter the Court's Order directing petitioner to respond to the Motion to Compel and the undersigned to file a motion to withdraw as counsel on or before September 13th [2001]. The undersigned contacted Terry Bentivegna, an assistant to James Binge, who advised that he was contacting Mr. Lehotsky who would take care of the matter.

After having not had any communication with Mr. Lehotsky the undersigned contacted Mr. Binge on Friday the 7th [of September 2001] and related the urgency of complying with discovery and the possible sanctions for failure to comply. Mr. Binge indicated that he was about to go out of town for a conference and that he would have to attend to the matter when he returned to the office on Tuesday. As a result of the Court's Order requiring a reply by the 13th [of September 2001] and Mr. Binge's inability to address the situation until the 11th [of September 2001] the undersigned

called the Petitioners and left a detailed voice mail message indicating that an immediate response to the Court's order was required and that the undersigned would be available to assist them without charge in formulating a reply.

On the evening of the 10th [of September 2001] the undersigned contacted James Binge at home who advised that the Petitioners had contacted him and that they did not with [sic] to speak with the undersigned. The undersigned was advised to send the Court's Order together with District Counsel's Motion to the Petitioners by overnight mail. Mr. Binge indicated that he would be meeting with the Petitioners to assist them in making a response. The undersigned indicated that he would be available to assist in that effort.

On the evening of the 10th [of September 2001] the undersigned mailed the Court's Order and District Counsel's Motion to the Petitioners for 10:00 am delivery on the 11th [of September 2001] via Federal Express.

It is clear to the undersigned that the Petitioners do not wish to have him continue to represent them. The undersigned has had numerous conversations with them and their accountant. They are aware of the significance of their decision to decline assistance.

On September 19, 2001, and September 24, 2001, respectively, the Court granted Mr. Wise's motion to withdraw in each of the cases at (1) docket Nos. 10001-00 and 10002-00 and (2) docket Nos. 9999-00 and 10000-00.

Although the Court's respective September 4, 2001 Orders directed petitioners in the cases at docket Nos. 10001-00 and 10002-00 to file on or before September 13, 2001, responses to respondent's respective motions to compel discovery in those cases, the Court received no such responses. On September 19, 2001, the Court issued respective Orders (September 19, 2001

Orders) in the cases at docket Nos. 10001-00 and 10002-00 in which it granted respondent's respective motions to compel discovery and ordered petitioners to produce on or before September 28, 2001, the documents requested in respondent's requests for production of documents and the answers to respondent's interrogatories. In the respective September 19, 2001 Orders in the cases at docket Nos. 10001-00 and 10002-00, the Court further ordered respondent to file written reports in those respective cases on or before October 9, 2001, informing the Court whether petitioners in those cases had complied with the Court's respective September 19, 2001 Orders. The Court's respective September 19, 2001 Orders put petitioners on notice in the cases at docket Nos. 10001-00 and 10002-00 that if they did

> not fully comply with the provisions of this Order, this Court will be inclined to impose sanctions pursu-ant to Tax Court Rule 104, which may include dismissal of this case and entry of a decision against peti-tioner.

On September 14, 2001, respondent filed a motion to consoli-date the instant cases for trial, briefing, and opinion, which the Court granted on September 24, 2001.

On October 3, 2001, Mr. Herbst filed on behalf of petition-ers in the instant cases a motion to continue the trial (peti-tioners' motion to continue) "until such time as the Petitioner has time to answer the Respondent's Motion to Compel Responses to Respondent's Interrogatories." In support of that motion,

petitioners alleged that "Petitioner is [sic] did not receive of [sic] any of the interrogatories that the Respondent wishes answered in a timely manner.  They were apparently sent to the attorney of record who was fired."  The reason quoted above for petitioners' asking the Court to grant petitioners' motion to continue was false and groundless.  As set forth above, on September 4, 2001, the Court served petitioners in the cases at docket Nos. 10001-00 and 10002-00, at the address of record listed in the petitions, with copies of (1) respondent's respective motions to compel discovery in those cases, including the exhibits that respondent had attached thereto (inter alia, respondent's discovery requests), and (2) the Court's respective September 4, 2001 Orders directing petitioners to file a response to each such motion on or before September 13, 2001.  Moreover, as discussed above, Mr. Wise represented in Mr. Wise's motion to withdraw that on September 10, 2001, he sent to petitioners via Federal Express for delivery at 10 a.m. on September 11, 2001, copies of the Court's September 4, 2001 Orders as well as respondent's motions to compel discovery.  On October 4, 2001, the Court denied petitioners' motion to continue.

On October 9, 2001, respondent filed a report (respondent's October 9, 2001 report) in each of the cases at docket Nos. 10001-00 and 10002-00, as directed by the Court in the Court's September 19, 2001 Order in each of those cases.  Respondent's

October 9, 2001 report in each of those cases indicated that as of October 5, 2001, petitioner in each such case had not provided any documents in response to respondent's request for production of documents or any responses to respondent's interrogatories.

On October 15, 2001, the Court had these cases called from the Court's trial calendar (calendar call) at the Court's trial session in Cleveland, Ohio (Cleveland trial session). At that calendar call, there was no appearance by or on behalf of Herbst Management Trust in the case at docket No. 9999-00, Herbst Charitable Trust in the case at docket No. 10000-00, Ms. Herbst in the case at docket No. 10001-00, and Mr. Herbst in the case at docket No. 10002-00. At that time, respondent orally moved to dismiss each of these cases for failure to prosecute, and respondent requested, and the Court held, a trial because, according to respondent, respondent had the burden of production pursuant to section 7491(c)[4] with respect to (1) the accuracy-related penalties under section 6662(a) for 1996 and 1997 that respondent determined against Herbst Management Trust in the case at docket No. 9999-00, (2) the additions to tax under section 6651(a)(1) for 1996 and 1997 that respondent determined against Herbst Charitable Trust in the case at docket No. 10000-00, (3) the

---

[4]All section references are to the Internal Revenue Code in effect at all relevant times. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

accuracy-related penalties under section 6662(a) for 1996 and 1997 that respondent determined against Ms. Herbst in the case at docket No. 10001-00, and (4) the accuracy-related penalties under section 6662(a) for 1996 and 1997 that respondent determined against Mr. Herbst in the case at docket No. 10002-00.

At the trial in these cases on October 15, 2001, there was no appearance by or on behalf of Herbst Management Trust, Herbst Charitable Trust, Ms. Herbst, and Mr. Herbst.

At the conclusion of the trial in these cases on October 15, 2001, the Court orally ordered respondent to file on or before November 2, 2001, a written motion to dismiss for lack of prosecution in each of these cases.  Thereafter, the Court granted respondent's motion to extend the time within which to file each such motion.  By Order dated October 15, 2001 (October 15, 2001 Order), the Court ordered the parties in these cases to file simultaneous opening briefs on or before November 29, 2001.

On November 13, 2001, respondent timely filed a written motion to hold petitioner in default in each of the cases at docket Nos. 9999-00 and 10000-00 and a written motion to dismiss for lack of prosecution and to impose sanctions under section 6673 in each of the cases at docket Nos. 10001-00 and 10002-00. (For convenience, we shall refer to each of the latter two motions as respondent's motion to dismiss for lack of prosecution.)

On December 3, 2001, the Court sua sponte issued separate Orders (December 3, 2001 Show Cause Orders) directing each party in the case at docket No. 9999-00 in which Herbst Asset Management Trust is named as petitioner and in the case at docket No. 10000-00 in which Herbst Charitable Trust is named as petitioner to

> show cause in writing why the Court has jurisdiction over this case, including the identity of any purported fiduciary of petitioner and a detailed analysis of why such purported fiduciary has the capacity to litigate in the Court on behalf of petitioner.

On December 19, 2001, respondent filed separate written responses to the December 3, 2001 Show Cause Orders in the cases at docket Nos. 9999-00 and 10000-00 in which respondent contended, inter alia, that Herbst Management Trust and Herbst Charitable Trust, respectively,

> 11.  * * * failed to establish that a trustee, if authorized, acted on its behalf when the purported petition was filed with the Court on September 25, 2000.
>
> 12.  * * * failed to file a proper petition with this Court in that the petition was not brought by and with the full descriptive name of the fiduciary entitled to institute a case on its behalf.

Respondent further argued in those separate responses to the December 3, 2001 Show Cause Orders in the cases at docket Nos. 9999-00 and 10000-00 that

> Since the petition in this case was not brought by a party with proper capacity as required by the Tax Court Rules of Practice and Procedure, the Court lacks jurisdiction * * *.

On December 20, 2001, Herbst Management Trust and Herbst Charitable Trust, respectively, filed responses to the December 3, 2001 Show Cause Orders in the cases at docket Nos. 9999-00 and 10000-00 (Herbst Management Trust's response to the December 3, 2001 Show Cause Order and Herbst Charitable Trust's response to the December 3, 2001 Show Cause Order, respectively), each of which was signed by Terrence A. Bentivegna (Mr. Bentivegna) who identified himself in each such response as "Trustee". Each such response asserted that "Petitioner does not believe that this Court has jurisdiction." In support of that position, Herbst Management Trust's response to the December 3, 2001 Show Cause Order and Herbst Charitable Trust's response to the December 3, 2001 Show Cause Order set forth statements and contentions that the Court found to be frivolous and/or groundless.[5]

---

[5]Each such response to the December 3, 2001 Show Cause Order stated in pertinent part:

1. Petitioner petitioned this Court after having received false and misleading information from the respondent and attorneys David Wise and his associate Carol Jackson. The respondent has failed to properly assess any taxes in accordance with their required administrative procedures, and yet advised the petitioner that the only method of disagreeing with the purported tax liability was to petition this Court.

2. This Courts' [sic] order states ". . . petitioner purports to be a trust . . ." Petitioner **is** a trust, and the respondent has never been able to prove otherwise. Nor does the respondent have the right or ability to set aside a contract.

(continued...)

Although not ordered by the Court, on January 16, 2002, Herbst Management Trust submitted, and the Court had filed, a response to respondent's motion to hold petitioner in default in the case at docket No. 9999-00, and Ms. Herbst in the case at docket No. 10001-00 and Mr. Herbst in the case at docket No. 10002-00 submitted, and the Court had filed, respective responses

---

[5](...continued)

     *      *      *      *      *      *      *

4. Petitioner does not want this false tax claim to be litigated in court, and has petitioned this Court to have this case removed from the docket as having been petitioned in error due to the erroneous instructions given by the respondent.

**WHEREFORE** it is prayed that:

1. This Court dismiss this case at petitioner's request as the original petition was issued in error due to false directions given to petitioner by respondent. Petitioner believes that he has the right to correct his mistake and withdraw the original petition.

2. This Court and the respondent recognize the petitioner as a Trust and cease attempting to set aside a contract in direct opposition to the Constitution of the United States of America.

3. This court sanction the respondent for using this Court for illegal purposes. Respondent has no legal tax claim as petitioner has noted to respondent and this Court on numerous occasions. Without a legal claim, respondent fraudulently instructed petitioner to use this Court to legitimize his illegal attempt to deprive petitioner of his assets.

4. This Court instruct the respondent to cease, now and forever, harassment of petitioner.

to respondent's motions to dismiss for lack of prosecution in those cases.  Although not ordered by the Court, on January 30, 2002, Herbst Charitable Trust submitted, and the Court had filed, a response to respondent's motion to hold petitioner in default in the case at docket No. 10000-00.  Each of those respective responses contained arguments and contentions that the Court found in respective Orders dated January 18, 2002 (January 18, 2002 Orders) in the cases at docket Nos. 9999-00, 10001-00, and 10002-00 and in an Order dated February 4, 2002 (February 4, 2002 Order) in the case at docket No. 10000-00 to be frivolous and/or groundless.  In the respective January 18, 2002 Orders and February 4, 2002 Order in those cases, the Court reminded petitioners about section 6673(a)(1).

On February 15, 2002, approximately 2½ months after the due date of the simultaneous opening briefs (i.e., November 29, 2001) ordered by the Court in its October 15, 2001 Order, Herbst Management Trust, Herbst Charitable Trust, Ms. Herbst, and Mr. Herbst filed in these cases a motion for leave to file a brief out of time and lodged a brief in these cases.  The Court granted that motion on February 15, 2002, and had that brief filed.  The brief set forth statements, contentions, and arguments that the

Court found to be frivolous and/or groundless.[6]

-------------------------

[6]Petitioners' brief in these cases stated in pertinent part:

This is a proceeding to determine if the Internal Revenue Service can ignore the strict limitations imposed on it by Congress, via the Code of Federal Regulations, and its' [sic] own required administrative procedures to extort assets from unsuspecting inhabitants of one of the fifty (50) states of the United States of America, to wit:  Ronald Herbst, et al.

   *      *      *      *      *      *      *

U.S.C. Title 26 Section 7602 is the I.R.S.'s authority to examine books and records regarding "internal revenue tax"--**not income tax**.  This is corroborated by the fact that the implementing regulation for Section 7602 is located in C.F.R. Title 27, parts 70, 170 and 296.

   *      *      *      *      *      *      *

In accordance with C.F.R. 1.861-8(f) petitioners, et al, do not receive any "income" or receipts from a "taxable source".

   *      *      *      *      *      *      *

Petitioners, et al, have never been legally assessed any tax as required by U.S.C. Title 26 Section 6203 and C.F.R. regulation 301.6203-1 and corroborated in Bull v. U.S., 295 US 247 * * *.

Petitioners, et al, determinations are based on Supreme Court decisions, Treasury Orders, U.S.C. Title 26 codes, and implementing (or lack of implementing) C.F.R. Title 26 regulations and various other references, and as such cannot be considered frivolous or ". . . a hodgepodge of unsupported assertions, irrelevant platitudes and legalistic gibberish."

   *      *      *      *      *      *      *

Ronald Herbst, et al, petitioners in the cases at Docket Nos. 9999-00, 10000-00, 10001-00 and 10002-00 are not liable for any income tax, penalties and/or

(continued...)

In Herbst I filed on March 27, 2002, the Court found, inter alia, (1) that Herbst Management Trust in the case at docket No. 9999-00 and Herbst Charitable Trust in the case at docket No. 10000-00 had failed to establish who has the authority to act on their behalf in those respective proceedings and (2) that neither of those cases was brought by and with the full descriptive name of the fiduciary entitled to institute each such case on behalf of Herbst Management Trust or Herbst Charitable Trust, as the case may be, as required by Rule 60(a)(1). The Court held in

---

[6](...continued)
interest pursuant to any U.S.C. Title 26 code sections.

Petitioners, et al, have at all times rebutted and refuted respondents prima facie allegations; thus, the burden of proof is on the respondent.

Treasury Order 120-01 dated June 6, 1972 establishes the Bureau of Alcohol, Tobacco and Firearms and transfers U.S.C. Title 26 Section 61 through 80, inclusive, to U.S.C. Title 27 and the Bureau of Alcohol, Tobacco and Firearms. Petitioners, et al, are not now and never have been involved in the manufacture, distribution or sale of alcohol, tobacco or firearms, or been involved in any other excise taxable activity. This is corroborated by the Code of Federal Regulations Table of Authority and Rules.

A review of the Department of the Treasury organization chart reveals that the Internal Revenue Service is not administered by any of the organizations with enforcement authority. This is corroborated by the fact that there are no Title 26 implementing regulation under Title 26 C.F.R.

The established trusts bear no burden of proof as their records are not subject to review. Boyd vs. U.S. 116 U.S. 618; Silver Thorne Lumber Co. vs U.S. 1251 U.S. 385.

Herbst I that it did not have jurisdiction over the cases at docket Nos. 9999-00 and 10000-00.

Pursuant to Herbst I, on March 28, 2002, the Court entered an Order of Dismissal in each of those cases in which the Court dismissed each such case for lack of jurisdiction.[7]

In Herbst I, the Court further found that (1) neither Ms. Herbst nor any authorized representative of Ms. Herbst and (2) neither Mr. Herbst nor any authorized representative of Mr. Herbst appeared on October 15, 2001, at the calendar call at the Court's Cleveland trial session or at the trial that the Court held in these cases. The Court also found in Herbst I that the respective written responses by Ms. Herbst and Mr. Herbst to respondent's motions to dismiss for lack of prosecution in the cases at docket Nos. 10001-00 and 10002-00 did not contain any valid reason why the Court should not dismiss those cases for lack of prosecution. The Court observed in Herbst I that those respective responses contained contentions and arguments that the Court had found in the Court's respective January 18, 2002 Orders in the cases at docket Nos. 10001-00 and 10002-00 to be frivolous and/or groundless. The Court also found in Herbst I that, despite the Court's admonitions in those Orders about (1) the frivolous and/or groundless contentions and arguments in Ms.

---

[7]Because we dismissed the cases at docket Nos. 9999-00 and 10000-00 for lack of jurisdiction, we denied respondent's motion to hold petitioners in default in each of those cases.

Herbst's and Mr. Herbst's respective responses to respondent's motions to dismiss for lack of prosecution in those cases and (2) section 6673(a)(1), the brief that petitioners filed in these cases on February 15, 2002, contained statements, contentions, and arguments that the Court found to be frivolous and/or groundless and did not set forth any valid reason why the Court should not dismiss for lack of prosecution the cases at docket Nos. 10001-00 and 10002-00.

With respect to the accuracy-related penalties under section 6662(a) at issue in the cases at docket Nos. 10001-00 and 10002-00, the Court found in Herbst I that respondent satisfied the burden of production that respondent maintained respondent had with respect to those penalties.

With respect to that part of respondent's motion to dismiss for lack of prosecution in each of the cases at docket Nos. 10001-00 and 10002-00 asking the Court to impose a penalty under section 6673(a)(1) on petitioner in each of those cases, the Court found in Herbst I that Ms. Herbst and Mr. Herbst instituted the proceedings in those respective cases primarily for delay and that their respective positions in those cases were frivolous and/or groundless. We held in Herbst I that Ms. Herbst was liable in the case at docket No. 10001-00 for a penalty under section 6673(a)(1) in the amount of $25,000 and that Mr. Herbst was liable in the case at docket No. 10002-00 for a penalty under

that section in the amount of $25,000.

Pursuant to Herbst I, on March 28, 2002, the Court entered an Order of Dismissal and Decision in each of the cases at docket Nos. 10001-00 and 10002-00. In each such Order, the Court granted respondent's motion to dismiss for lack of prosecution in each such case in that we dismissed each of those cases for failure by petitioner to prosecute. The Court also entered in each such Order a decision in each of the cases at docket Nos. 10001-00 and 10002-00 (1) sustaining the determinations that respondent made in the notice of deficiency to which each such case pertained, but in reduced amounts which respondent conceded were appropriate in order to reflect the duplication of certain income determinations in the respective notices of deficiency issued to Ms. Herbst and Mr. Herbst, and (2) imposing a penalty pursuant to section 6673(a)(1) on Ms. Herbst in the case at docket No. 10001-00 in the amount of $25,000 and on Mr. Herbst in the case at docket No. 10002-00 in the amount of $25,000.

On June 24, 2002, Mr. Wise again entered an appearance in each of the cases at docket Nos. 9999-00 through 10002-00. On the same date, Mr. Wise, on behalf of Herbst Management Trust in the case at docket No. 9999-00 and Herbst Charitable Trust in the case at docket No. 10000-00, filed a motion for leave (motion for leave) to file motion to vacate order of dismissal in each of those cases and lodged a motion to vacate (motion to vacate)

order of dismissal in each such case and a memorandum in support of each such motion. On June 25, 2002, the Court granted the Trust's motion for leave in each of the cases at docket Nos. 9999-00 and 10000-00 and had filed in each such case the Trust's motion to vacate and the memorandum in support thereof (collectively, the Trust's motion to vacate).

On June 24, 2002, Mr. Wise, on behalf of Ms. Herbst in the case at docket No. 10001-00 and Mr. Herbst in the case at docket No. 10002-00, filed motions for leave to file motions to vacate order of dismissal and decision and lodged motions to vacate order of dismissal and decision and memoranda in support thereof in those respective cases. On June 25, 2002, the Court granted Ms. Herbst's motion for leave in the case at docket No. 10001-00 and Mr. Herbst's motion for leave in the case at docket No. 10002-00 and had filed in those respective cases Ms. Herbst's motion to vacate and the memorandum in support thereof (collectively, Ms. Herbst's motion to vacate) and Mr. Herbst's motion to vacate and the memorandum in support thereof (collectively, Mr. Herbst's motion to vacate).[8]

On July 2, 2002, petitioners filed in these cases a motion for leave to file motion for reconsideration and lodged a motion for reconsideration in these cases. On the same date, the Court

---

[8]The Court is issuing an Order in each of these cases addressing petitioner's motion to vacate in each such case.

granted the motion for leave and had filed in these cases petitioners' motion for reconsideration. On July 2, 2002, petitioners filed in these cases petitioners' motion to reopen the record (petitioners' motion to reopen the record).[9]

On July 24, 2002, respondent filed a response to the Trust's motion to vacate in each of the cases at docket Nos. 9999-00 and 10000-00, to Ms. Herbst's motion to vacate in the case at docket No. 10001-00, and to Mr. Herbst's motion to vacate in the case at docket No. 10002-00.[10]

---

[9]The Court is issuing an Order in these cases addressing petitioners' motion to reopen the record.

[10]Respondent did not file a response to petitioners' motion for reconsideration or a response to petitioners' motion to reopen the record. That was because, in an Order dated July 2, 2002 (July 2, 2002 Order), the Court indicated that the contentions and arguments advanced in each of the Trust's motions to vacate, Ms. Herbst's and Mr. Herbst's motions to vacate appeared to be essentially the same as the contentions and arguments advanced in petitioners' motion for reconsideration and petitioners' motion to reopen the record. The Court further indicated in the July 2, 2002 Order that it appeared that any response by respondent to petitioners' motion for reconsideration and respondent's response to petitioners' motion to reopen the record would be essentially the same as respondent's response to each of the Trust's motions to vacate, Ms. Herbst's motion to vacate, and Mr. Herbst's motion to vacate. Consequently, in the Court's July 2, 2002 Order, the Court directed respondent to file a response to petitioners' motion for reconsideration and a response to petitioners' motion to reopen the record only if respondent believed that it was necessary to file each such response. Obviously, respondent did not believe that it was necessary to file any responses to those motions.

Discussion

The granting of a motion for reconsideration rests within the discretion of the Court.  Estate of Quirk v. Commissioner, 928 F.2d 751, 759 (6th Cir. 1991), affg. in part and remanding in part T.C. Memo. 1988-286; Klarkowski v. Commissioner, 385 F.2d 398, 401 (7th Cir. 1967), affg. T.C. Memo. 1965-328.  A motion for reconsideration will be denied unless unusual circumstances or substantial error is shown.  Estate of Quirk v. Commissioner, supra at 759; Alexander v. Commissioner, 95 T.C. 467, 469 (1990), affd. without published opinion sub nom. Stell v. Commissioner, 999 F.2d 544 (9th Cir. 1993); Vaughn v. Commissioner, 87 T.C. 164, 167 (1986).

Petitioners' motion for reconsideration fails to address the Court's holdings in Herbst I that the Court does not have juris-diction over the cases at docket Nos. 9999-00 and 10000-00[11]

---

[11]We note that the respective responses to the Court's December 3, 2001 Show Cause Orders in the cases at docket Nos. 9999-00 and 10000-00 asserted that "Petitioner does not believe that this Court has jurisdiction."

We further note that attached as an exhibit to the Trust's motion to vacate in the case at docket No. 9999-00 is, inter alia, an affidavit of Mr. Herbst (Mr. Herbst's affidavit), allegedly notarized by Mr. Binge.  Mr. Herbst's affidavit states: "At the time of the filing of the Petition, and since the incep-tion of the Trust in the above-captioned matter, I was the Trustee for the Petitioner."  Attached to Mr. Herbst's affidavit are, according to that affidavit, "true and accurate copies of the originals" of the trust documents pertaining to Herbst Management Trust, which Mr. Herbst alleges in Mr. Herbst's affidavit "were maintained in my possession until April, 2002."
(continued...)

and addresses only in a general way the Court's holdings in Herbst I granting respondent's respective motions to dismiss for lack of prosecution in the cases at docket Nos. 10001-00 and

_____

[11](...continued)
The only document attached to that affidavit is a document entitled "NOTICE OF APPOINTMENT OF DIRECTOR" dated Oct. 12, 1995. That document recites that "The current Directors of said Company [Herbst Management Company] as of this date are Ronald P. Herbst, Edward Bartoli and Andrea D. Herbst." We conclude that Mr. Herbst's affidavit and the trust paper attached to that affidavit in the case at docket No. 9999-00 do not establish who has the authority to act on behalf of Herbst Management Trust in that case. Mr. Herbst seems to suggest in Mr. Herbst's affidavit, without expressly stating, that he has that authority. However, in the case at docket No. 9999-00, Mr. Bentivegna signed as "Trustee" (1) the response to the Court's December 3, 2001 Show Cause Order and (2) the response to respondent's motion to hold petitioner in default.

We also note that attached as an exhibit to the Trust's motion to vacate in the case at docket No. 10000-00 is, inter alia, an affidavit of Mr. Binge (Mr. Binge's affidavit). Although that affidavit purports to have been notarized in the presence of a notary public, the affidavit bears no date on which such notarization allegedly took place. Mr. Binge's affidavit that was attached to the Trust's motion to vacate in the case at docket No. 10000-00 is virtually identical to Mr. Herbst's affidavit that was attached to the Trust's motion to vacate in the case at docket No. 9999-00. Attached to Mr. Binge's affidavit in the case at docket No. 10000-00 are, according to Mr. Binge, "true and accurate copies of the originals" of the trust documents pertaining to Herbst Charitable Trust, which Mr. Binge alleges in Mr. Binge's affidavit in that case "were maintained in my possession until April, 2002." There are no trust papers attached to Mr. Binge's affidavit in the case at docket No. 10000-00. We conclude that Mr. Binge's affidavit in the case at docket No. 10000-00 does not establish who has the authority to act on behalf of Herbst Charitable Trust in that case. Mr. Binge seems to suggest in his affidavit in that case, without expressly stating, that he has that authority. However, in the case at docket No. 10000-00, Mr. Bentivegna signed as "Trustee" the response to the Court's December 3, 2001 Show Cause Order and the response to respondent's motion to hold petitioner in default.

10002-00 and imposing a penalty under section 6673(a)(1) on Ms. Herbst in the case at docket 10001-00 in the amount of $25,000 and on Mr. Herbst in the case at docket No. 10002-00 in the amount of $25,0000. The crux of petitioners' motion for reconsideration regarding all of those holdings is petitioners' claim that petitioners' conduct in these cases was the result of the reliance by Ms. Herbst and Mr. Herbst on Mr. Binge, their tax return preparer, and Mr. Bentivegna, an associate of Mr. Binge. That claim rings hollow.

Not only did respondent and the Court inform petitioners in these cases that there could be sanctions as a result of their conduct in these cases, petitioners' counsel Mr. Wise also advised Ms. Herbst and Mr. Herbst that "reliance upon the recommendations of James Binge may not be in their best interest." In response to such advice and other advice from Mr. Wise, petitioners fired him. As made clear in Mr. Wise's motion to withdraw, Mr. Wise made repeated efforts throughout the period starting in at least June 2001 to September 11, 2001, to make Ms. Herbst and Mr. Herbst understand that there could be sanctions if they followed the advice of Mr. Binge and Mr. Bentivegna.[12] On Sep-

---

[12]Contrary to the allegation in petitioners' motion for reconsideration that Mr. Binge and Mr. Bentivegna never shared "non-traditional" beliefs with Ms. Herbst and Mr. Herbst because they were regarded as "traditional" clients, Mr. Wise's respective motions to withdraw in the cases at docket Nos. 10001-00 and 10002-00 stated that Ms. Herbst and Mr. Herbst "indicated that
(continued...)

tember 11, 2001, the date on which Mr. Wise signed his motion to
withdraw in each of the cases at docket Nos. 10001-00 and 10002-
00, Mr. Wise stated at the end of each such motion:

> It is clear to the undersigned [Mr. Wise] that the
> Petitioners do not wish to have him continue to repre-
> sent them.  The undersigned has had numerous conversa-
> tions with them and their accountant.  They are aware
> of the significance of their decision to decline assis-
> tance.

We reject the attempt in petitioners' motion for reconsider-
ation to blame Mr. Binge and Mr. Bentivegna for petitioners'
conduct in these cases.  Petitioners chose to ignore the warnings
of respondent, their own counsel Mr. Wise whom they fired, and
the Court.  It was only after the Court issued Herbst I on March
27, 2002, that petitioners rehired Mr. Wise and suggested that
they wanted to do now what they should have done before the Court
issued that Opinion.[13]

---

[12](...continued)
they were having second thoughts about continuing the representa-
tion [Mr. Wise's representation] and were exploring 'non-tradi-
tional' alternatives with James Binge."

[13]Petitioners' motion for reconsideration indicates that on
Mar. 29, 2002, Mr. Wise called Ms. Herbst and Mr. Herbst to
advise them of Herbst I and the respective Orders of Dismissal in
the cases at docket Nos. 9999-00 and 10000-00 and the respective
Orders of Dismissal and Decision in the cases at docket Nos.
10001-00 and 10002-00.  According to petitioners' motion for
reconsideration, Mr. Wise advised Ms. Herbst and Mr. Herbst that
the deadline within which to file motions to vacate those Orders
was soon approaching and that something needed to be done immedi-
ately.  We do not understand why Mr. Wise contacted Ms. Herbst
and Mr. Herbst on Mar. 29, 2002, since petitioners in the instant
cases had fired Mr. Wise around July 2001.  See Rule 201; ABA,
(continued...)

We find that petitioners have only themselves to blame for the consequences resulting from their actions and inactions in these cases and that they should bear responsibility for their conduct. It was petitioners who decided not to have these cases heard on the merits. They decided not to cooperate with, and to ignore the warnings of, respondent, their own counsel Mr. Wise whom they fired, and the Court.

The Court provided petitioners in these cases ample opportunity to present relevant information to the Court even (1) after respondent orally moved to dismiss these cases at the calendar call on October 15, 2001, (2) after the trial took place on the same date, and (3) after respondent filed on November 13, 2001, a written motion to hold petitioners in default in each of the cases at docket Nos. 9999-00 and 10000-00 and a written motion to dismiss for lack of prosecution in each of the cases at docket Nos. 10001-00 and 10002-00. Petitioners declined to provide any such relevant information. Instead, they failed to prosecute their respective cases, ignored all Orders of the Court, and submitted to the Court documents containing statements, contentions, and arguments that were frivolous and/or groundless. In addition, the named petitioner in each of the cases at docket Nos. 9999-00 and 10000-00 failed to establish who has the author-

---

[13](...continued)
Ann. Model Rules of Profl. Conduct R. 7.3 (1999).

ity to act on its behalf in each such case.

We remind petitioners that

If the Court granted a second chance to every party who lost because of his failure to act in some manner, the Court clearly could not keep abreast of its work. In effect, we would be telling the parties that if they were not satisfied with the first decision, try again. * * *

Koufman v. Commissioner, 69 T.C. 473, 476 (1977).[14]

We find that petitioners have not shown any unusual circumstances or substantial error that warrants the Court's relieving them of the consequences of their conduct in these cases by granting petitioners' motion for reconsideration.

We have considered all of the arguments and contentions set forth in petitioners' motion for reconsideration that are not discussed herein, and we find them to be without merit and/or irrelevant.[15]

---

[14]See also Long v. Commissioner, 71 T.C. 724, 727 (1979), remanded on another issue 660 F.2d 416 (10th Cir. 1981), in which we quoted the following passage from Selwyn Operating Corp. v. Commissioner, 11 B.T.A. 593, 595 (1928):

A party is entitled to have his day in court; both parties are entitled to this, but neither party is entitled to have more than one fair, reasonable opportunity to establish his claim or defense. To allow more would be to protract litigation to the extent which would preclude the administration of justice.

[15]With respect to petitioners' reliance in petitioners' motion for reconsideration on Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930 (2d Cir. 1988); Harper v. Commissioner, 99 T.C. 533 (1992); Marcus v. Commissioner, 70 T.C. 562 (1978), affd. without published opinion 621 F.2d 439 (5th Cir.

(continued...)

To reflect the foregoing,

<u>An Order denying petitioners'
motion for reconsideration will be
issued</u>.

---

[15](...continued)
1980); and <u>Leavell v. Commissioner</u>, T.C. Memo. 1996-117, we find those cases to be materially distinguishable from the instant cases and petitioners' reliance on those cases to be misplaced.